J. A. WILLOUGHBY, *Receiver of the Capitol National Bank of Guthrie, Oklahoma,* v. E. P. KELLY.

(Filed September 4, 1907.)

(91 Pac. 874.)

APPEAL—Review—Evidence—Corporations—Stock Book—Conclusiveness. Where, as in this case, the contents of a bank stock book are relied upon to establish the fact that at the date of the bank's failure the defendant was a stockholder in the bank and liable as such, the contents of such book are not conclusive in the absence of testimony showing the same to have been accurately and correctly kept. And where the testimony as a whole throws doubt upon the facts sought to be established by the introduction of such evidence, and presents proof from which a conclusion may be adversely drawn, the conclusions of the trial court adverse to the conclusions sought to be established by such stock book will not be disturbed.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Bayard T. Hainer, Trial Judge.*

Affirmed.

*Flynn & Ames* and *R. A. Kleinschmidt,* for plaintiff in error.
*Strang, Devereux & Hildreth* and *Lawrence & Huston,* for defendant in error.

### STATEMENT OF FACTS.

This action was brought by J. A. Willoughby, receiver of the Capitol National Bank of Guthrie, to recover from the defendant one thousand dollars, the amount of the levy of the comptroller of the currency upon ten shares of stock of the said bank belonging, as alleged, to defendant. The assessment was made by the comptroller May 9, 1904. The defendant admitted the regularity and legality of the levy, but denied liability thereunder. From the proceedings had upon the trial of the case in April, 1905, it appeared from the stock book of the bank offered in evidence that the defendant, Kelly, was the owner of ten shares of the capital stock of the bank from and after January 31, 1902. The defendant, on becoming the owner of such stock, was elected a director of the bank, which position he filled for about a year, when he tendered his resignation in writing, which was accepted in November, 1903, at which date he claimed his entire connection with the bank as director and stockholder ceased, and therefore denies any liability for the assessment.

It appears from the record that the defendant, Kelly, was solicited by the president of the bank to become a director of the corporation, and that he consented, and, in order to qualify him for such position, the president of the bank, Billingsley, caused the transfer of ten shares of his stock from his name to that of the defendant, and thereafter the defendant qualified as a director, affirming in his oath of office that he was the owner of ten shares of stock in the bank. It appears, however, that the defendant was not in fact the real owner of the stock, and the same was never

delivered to him. Stock certificates were issued in his name, but the same were not signed by the president or attested by the corporate seal. When thus partially issued, they were placed in the vault of the bank, and were there found when the receiver took charge, and no dividends thereon were ever paid to defendant. The defendant testified that when the stock was issued in his name he immediately reassigned it, by signing a blank for the assignment thereof printed on the back of the stock certificate, but the blank for such assignment, printed on the stock found in the vault, was not signed. It is shown by the defendant's testimony that when he resigned as director he intended to sever all connection with the bank, including a retransfer of the stock to Billingsley. He was not present at the directors' meeting when his resignation was formally accepted in November, 1903, although the bank records show him to have been present. That he was in the city of Guthrie that day, and that he went to the bank, but upon arriving there was informed by the president that it was all over, and that one G. A. Nelson had been elected in his place. The defendant at the time asked the president of the bank if there was anything else for him to sign to show he had no interest in the bank, and he was told that everything had been signed, and that his stock had been transferred. Corroborating this testimony of the defendant, the record shows that on February 27, 1904, three months after the date upon which Kelley's resignation was accepted and his stock canceled, as stated by the president, Billingsley, a special stockholders' meeting was called and held. That at such meeting the owners of 960 shares were present, as follows:

| | | |
|---|---|---|
| A. G. Brower | 400 shares | |
| C. R. Brooks | 10 shares | |
| Chas. E. Billingsley | 510 shares | |
| G. A. Nelson | 10 shares | |
| J. C. Robb | 30 shares | 960 |
| Absent stockholders: | | |
| T. A. Neal | 10 shares | |
| J. G. Edmonson | 30 shares | 40 |
| Total | 1000 shares | 1000 |

And at this meeting 53 per cent. assessment was levied upon all the stock of the bank.

From the testimony the trial court found the issues in favor of the defendant, and the plaintiff brings the case to this court alleging error. Other necessary facts are set out in the opinion.

Opinion of the court by

GILLETTE, J.: It is manifest that the only question to be determined in this case is as to whether or not the defendant was a stockholder in the Capitol National Bank at the time of its failure, April 4, 1904. From the facts stated, it must be conceded that he never was at any time a stockholder of the bank in good faith. This fact, however, does not relieve him from liability to the creditors of the bank to the extent that the law makes stockholders liable in case of the bank's failure, for he could not hold himself out as a stockholder, or knowingly permit the bank so to do, without assuming complete responsibility to the full extent that the law fixed liability upon stockholders in good faith. That in January, 1902, he permitted his name to appear as a stockholder in the bank and qualified as a director, upon the faith of his interest in the bank to the extent of ten shares, is admitted. That he continued in this relationship to the bank voluntarily until his attempted resignation in the summer of 1903 is settled by the record, and that he was liable to the creditors of the bank as an officer and stockholder until the 21st day of November, 1903, there can, we think, be no question. It is here, then, that the real contest in this case begins and turns upon the settlement of the question as to whether or not, when he resigned as a director of the bank, he relinquished and transferred the stock then carried on the books of the bank in his name; for the record does not show the bank to have been in a failing condition at that time, and does show his resignation as a director and the acceptance of the same upon that date. It further shows a purpose on his part at that time to entirely sever his connection with the institution.

and, in considering the question as to whether he did so sever his connection, it must be remembered that he did not have actual possession of the ten shares of stock which had been assigned to him and carried on the books of the bank in his name. They were in the bank vault only partially filled out, but at that time, upon being informed by the president of the bank that he had been relieved as a director, he made inquiry if there was anything else necessary for him to sign to secure · his complete release of any connection with the bank, and was informed by the president that there was not. This certainly barred him from any interest in or demand against the assets of the bank, and concluded the bank as a bank from demanding anything from him. He did not have possession of stock to cancel or surrender. He was relieved as a director and the stock which had been carried in his name, in fact belonged to the president, and the president informed him that nothing further was necessary. It is therefore a naked legal proposition as to whether or not he is liable upon an assessment against him by the comptroller of the currency. Section 12 of the national bank act provides:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein."

Was he, at the time of the failure of the bank, a stockholder? As between him and president, Billingsley, whose stock had been assigned to him, he was not, and, as between him and the bank for any profit of the bank, he was not. But it is urged that the stock book still showed him a stockholder. This book we understand from the evidence to have been originally a book containing blank shares of capital stock, with stubs which, when a share of stock is issued, is filled out giving a history of such issuance, and the proofs of record show that when the bank closed A. G. Brown was the owner of stock certificate 30 of 100 shares issued January, 1896; No. 31 of 100 shares issued January, 1906; and No. 63 of

200 shares issued May 26, 1902, a new issue of stock not receipted for. C. E. Billingsley was the owner of certificate No. 53 of 25 shares, issued December, 1900; No. 54, 25 shares; 56, of 25 shares; 57 of 50 shares; 58, 50 shares; 59, 50 shares; No. 65 of 270 shares, issued May, 1902; a new issue not receipted for; No. 69, 75 shares issued March 1903; a reissue from original certificate No. 67 of 15 shares, and No. 71 of 10 shares issued April, 1904; a reissue of all of certificate 58; No. 71 of 10 shares, C. R. Brooks, issued January, 1902; a transfer from all of certificate 29; No. 60 of 30 shares, J. G. Edmonson; transfer from all of certificate 46, 47, 48, 49 and 51 issued January, 1902; No. 66 of 10 shares to T. A. Neal, issued March, 1903; a transfer of 10 shares from original certificate No. 55 issued for 25 shares; No. 70 of 30 shares issued to J. C. Robb, issued December, 1903; a reissue of all of original certificate No. 54; No. 62 of 10 shares to E. P. Kelly, issued January 31, 1902; a reissue of all of original certificate 32 and 52. As will be seen, these certificates named are for 1000 shares, the whole stock of the bank, and the defendant's ten shares of stock are included in the list. The record shows with reference to the introduction of this evidence:

"MR. KLEINSCHMIDT: We offer in evidence that part of the stock book showing the shares held by the various stockholders of the Capitol National Bank. THE COURT: It may be considered in evidence."

Then follows the certificate of which the foregoing in an abstract. No other parts of the stock book are shown in the record.

It is urged that this stock certificate book is a book of original entries, and therefore the best evidence of who the stockholders were at that time. Touching this question, we have to say that, as against the bank, it is probably the best evidence. The results to be ascertained from the book are such results as the book is made to speak through the methods in which it has been kept. There is no evidence in this record that the results deducible from this book are the facts in the case, or that the book has been correctly and accurately kept. We say, therefore, that as against the bank the

result logically deducible therefrom is the best evidence, and as against the bank almost conclusive, but as against third persons adversely interested such effective application of record testimony of this kind cannot be made. A man's liability cannot be fixed by the bookkeeping of some other party, and in such case such testimony has weight or lacks weight according as the correctness of the bookkeeping is admitted or shown. In this case we have but a portion of the bank stock book before us, and no satisfactory conclusion can be deduced therefrom. It is confidently urged that just $100,000 of outstanding stock was shown by the certificates hereinbefore described. That is true. But is this all and conclusive of the fact that such list of outstanding stock and stockholders measures accurately and conclusively what stock and stockholders were alone liable as such when the bank failed. The defendant's stock passed to his name January 31, 1902. We have no doubt but that the entire capital stock of the bank was at that time subscribed for and owned, and yet four months afterwards certificate No. 63 for 200 shares was issued to A. G. Brower and marked "a new issue." At the same time (May, 1902) stock certificate 65 to C. E. Billingsley for 270 shares, marked "new issue." This is approximately one-half the capital stock of the bank. It surely was not an original issue of stock, and what other stock is taken up by such new issue of stock is left wholly to conjecture. Stock certificate No. 66, for 10 shares, to T. A. Neal, issued March, 1903, was a transfer from original certificate No. 55, which original certificate was for 25 shares, and stock certificate 69, for 5 shares, to C. E. Billingsley, issued November 21, 1902, was a transfer from original certificate No. 61, which original certificate was for 15 shares.

It will be observed that this record evidence touching the last two named certificates shows that, at the time of the failure of the bank, there was outstanding, on certificate No. 55 and 67, 25 shares of the capital stock of the bank, and these are not included in the record offered to make up the 1000 shares of stock, which

Vol. 19—9

plaintiff claims was outstanding and alone liable. It will also be observed that stock certificate 67, with 10 shares thereof not accounted for in the record of the stock book offered in evidence, was issued long subsequent to the date of the plaintiff's certificate. The record is silent as to who it was issued to. If presumptions may be indulged in, it would be fair to presume that certificate 67, for 15 shares, was issued to Billingsley, and that afterwards he caused certificate 69 to issue for 5 of these shares. Such a presumption would show 510 shares in C. E. Billingsley. The facts are that the proofs offered from the stock book are most unsatisfactory and inconclusive. The trial court manifestly accepted the evidence touching the transactions of the bank on February 27, 1904, as more reliable, and which shows the stock of the bank outstanding at that time to be in Brower, Brooks, Billingsley, Nelson, Robb, Neal, and Edmonson, and on which date a 53 per cent. levy was made on the stock of the bank in the name of those persons as stockholders; Billingsley paying such assessment on 510 shares. We think the trial court had a right to adopt this view of the testimony, which by the well-settled rule of this court cannot be disturbed where a conflict in the testimony appears.

Under the conclusion here reached the principal ground set forth in the motion for a new trial is immaterial, which was that a letter, dated July 10, 1903, was signed by E. P. Kelly, and which signature he denied. This act of Kelly's, if admitted, would not change the conclusion here reached, for his connection with the bank was not concluded until the following November, when his resignation as a director was accepted, and at which time he was informed by the president of the bank that his connection with the bank was wholly severed.

Finding no reversible error in the record the judgemnt of the trial court is affirmed.

Hainer, J., who presided in the court below, not sitting; Irvin, J., absent; all the other Justices concurring.