v. Railroad, 162 N. Y. 84, 56 N. E. 532, 48 L. R. A. 115. I think that the learned court did not err in admitting the oral testimony of this alleged agreement between the defendants, the plaintiff, and the bank. Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32. The distinction made in Seymour v. Cowing, 4 Abb. Dec. 201,—one of the authorities cited in Higgins v. Ridgway, supra,—is that such evidence does not alter or vary the contract, but it prevents a delivery, which, unqualified, would give instant effect to the agreement, from being any other or greater effect than that contemplated.

It is also contended that the court erred in excluding the testimony of the plaintiff that there was no conversation had between him and the defendant Carr relative to the arrangement in question. Such evidence certainly was admissible. Becker v. Koch, 104 N. Y. 394, 10 N. E. 701, 58 Am. Rep. 515. But the record shows that the plaintiff was asked whether the conversation ever took place, whereupon he answered, "Not one word." Objection was then made on the ground that the question was incompetent and improper, in that the plaintiff could not contradict his own witness. Then the question is repeated in a more comprehensive form, and the same objection was made; but the witness again answered, "None whatever." The court said: "You voluntarily took the risk of his testimony being unfavorable to you? (Objection sustained.)" Plaintiff excepted. If the objection had excluded the conversation, I think that the ruling would have been serious error, but the record shows that the evidence was admitted before the ruling was made, and it does not appear that the court struck it out. Moreover, it appeared that the witness shortly thereafter gave testimony which, in its plain effect, was a denial that he had ever had any conversation with Carr. I cannot see that the plaintiff was prejudiced by the exclusion of the receipts indorsed on the notes. St. John had previously testified that they represented money paid by the order of the surrogate (which was shown to be 40 per cent.); that the receipt was signed by Scott, who was cashier of the bank, but that he knew nothing of it. Thus there was no question that the payment had been made, and, on the other hand, there was nothing that connected either defendant with such indorsement. None of the other questions raised require comment.

The judgment should be affirmed with costs. All concur.

---

HOEY v. METROPOLITAN ST. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. March 7, 1902.)

1. TRIAL—NONSUIT—DISMISSAL—SPECIAL VERDICT.

     Under Code Civ. Proc. § 1187, providing that, when a motion to nonsuit the plaintiff or for the direction of a verdict is made, the court may, pending the decision of such motion, submit any question of fact to the jury, and when a special verdict is rendered on such submission the court may determine such motion, it is error for the court to direct a judgment dismissing the complaint on the merits after such motion, submission, and special verdict.

2. STREET RAILWAYS—PERSONAL INJURY—SUBSEQUENT DECEASE—PROXIMATE.
   CAUSE—TRIAL JUDGMENT.

 Where plaintiff's intestate was injured while a passenger on a street
car by a collision of cars, and soon thereafter was stricken with acute
pulmonary tuberculosis, from which disease the jury found he died, and
there was no evidence that the disease was caused by or resulted from
the accident, judgment, in an action against the railway company to
recover damages for such death, should be directed for defendant.

 O'Brien and Laughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action by Kate V. Hoey, as administratrix of the estate of James
J. Hoey, against the Metropolitan Street Railway Company and an-
other. From a judgment for defendants (72 N. Y. Supp. 544), plain-
tiff appeals. Corrected and affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, O'BRIEN, and LAUGHLIN, JJ.

William Rumsey, for appellant.
Charles F. Brown, for respondents.

McLAUGHLIN, J. On the 11th of December, 1899, James J.
Hoey, the plaintiff's intestate, while a passenger in one of the defend-
ants' cars, was seriously injured by the car in which he was riding
colliding with another car belonging to the defendants. He died on
the 30th of September, 1900, and this action was brought to recover
damages for his death, on the ground that the negligence of the
defendants was the cause of it. At the trial the defendants' negli-
gence and the intestate's freedom from negligence were conceded,
and the sole question litigated was whether the injuries sustained
by the intestate at the time of the collision were the proximate cause
of his death. At the close of the case, defendants' counsel moved
for the dismissal of the complaint, or for the direction of a verdict;
and pending the consideration of such motion the trial court sub-
mitted to the jury, under section 1187 of the Code of Civil Procedure,
certain specific questions of fact, with instructions to also render a
general verdict. One of the specific questions of fact was: "Did
James J. Hoey die September 30, 1900, from hasty consumption?"
This was answered in the affirmative, and a general verdict rendered,
awarding plaintiff, as damages, $12,500. The jury were discharged,
and the trial court, after consideration, directed that a judgment be
entered dismissing the complaint upon the merits; setting aside the
general verdict and the answers to all of the questions except the
one above given. To this ruling the plaintiff excepted. Judgment
was entered accordingly, from which this appeal is taken.

The court had no power to dismiss the complaint upon the merits,
nor to set aside the answers of the jury to the specific questions of
fact submitted to, or the verdict rendered by, them. It will be ob-
served that the section of the Code referred to provides that after
the jury shall have rendered a special verdict upon such submission,
or shall have assessed the damages, then the court may pass upon
the motion to nonsuit or direct a general verdict, and, on appeal
from the judgment entered upon such nonsuit or general verdict, such

special verdict or general verdict shall form a part of the record, and that the appellate division may direct such judgment thereon as either party may be entitled to. The trial court, therefore, could, after the rendition of the special verdict by the jury, have adopted either one of two courses: He could nonsuit the plaintiff, or direct the jury to render a general verdict. He did not direct a general verdict, nor did he nonsuit the plaintiff, but, instead, directed judgment dismissing the complaint upon the merits. This was clearly erroneous, but in view of the conclusion at which we have arrived, inasmuch as the special verdict is in fact set out in the record, it is of no importance, since this court has power to direct such judgment as either party may be entitled to. The judgment should have been one nonsuiting the plaintiff, instead of dismissing the complaint on the merits.

This brings us to the consideration of the main question presented, and that is whether the injuries which the plaintiff's intestate sustained in the collision were the proximate cause of his death. If they were not, then the plaintiff was not entitled to recover. The uncontradicted evidence adduced upon the trial was to the effect that a few weeks prior to his death he was stricken with accute pulmonary tuberculosis, which disease, the jury found, caused his death. Any other finding would have been clearly against evidence. Was the disease, then, from which the intestate died, the direct result of the injuries which he sustained in the collision; in other words, was defendants' negligence the proximate cause? A proximate cause, as defined by the court of appeals in Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216, "is one in which is involved the idea of necessity. It is one the connection between which and the effect is plain and intelligible. It is one which can be used as a term by which a proposition can be demonstrated; that is, one which can be reasoned from conclusively. A remote cause is one which is inconclusive in reasoning, because from it no certain conclusion can be legitimately drawn. In other words, a remote cause is a cause the connection between which and the effect is uncertain, vague, or indeterminate. * * * The proximate cause being given, the effect must follow. But although the existence of the remote cause is necessary for the existence of the effect (for, unless there be a remote cause there can be no effect), still the existence of the remote cause does not necessarily imply the existence of the effect. The remote cause being given, the effect may or may not follow." A proximate cause, as thus defined, was quoted with approval in a recent case by the same court (Seifter v. Railroad Co., 169 N. Y. 254, 62 N. E. 349). There is no doubt that the deceased sustained very serious injuries in the collision, and by reason thereof, within a short time thereafter, developed what is termed in the record as "progressive muscular atrophy"; but there is nothing in the evidence which would justify a finding that the tuberculosis which resulted in his death was caused by, or necessarily flowed from, that disease. On the contrary, the evidence is uncontradicted that tuberculosis is a germ disease, and that, in order to contract it in the lungs, the germ must be inhaled, and that these germs were not the result of, or pro-

duced by, the accident; that they came from a source independent of, and not.connected with, it. What is claimed is that the intestate's condition was so weakened by his injuries, and the disease resulting from them (that is, progressive muscular atrophy), it ·made him susceptible to tuberculosis, and by reason thereof he contracted it. There is nothing in the evidence to sustain this claim, and such conclusion is based upon conjecture and speculation alone. To entitle the plaintiff to recover, she was bound to prove that the death of her intestate was the direct result of his injuries; that his injuries were the cause, and his death the effect,—an unbroken chain extending from the cause to the effect. Weber v. Railroad Co., 12 App. Div. 512, 42 N. Y. Supp. 789. And any link in that chain could not be supplied by a mere possibility. Railroad Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. If it could, then it is not difficult to see how easy it would be to take property from one person and give it to another, sanctioned by judicial procedure. The negligence of the defendants may have been the cause of the intestate's death, but whether it was or was not is a pure guess, and nothing more; and a judgment, in law, cannot stand upon a guess or bare possibility.

Our conclusion, therefore, is that the judgment should be corrected as indicated in this opinion, and, as thus corrected, affirmed, without costs to either party.

VAN BRUNT, P. J., and PATTERSON, J., concur. O'BRIEN and LAUGHLIN, JJ., dissent.