## LEVY v. GROVE MILLS PAPER CO.

(Supreme Court, Appellate Division, Second Department. March 6, 1903.)

1. TRIAL—SUBMISSION TO JURY—GENERAL VERDICT—DISMISSAL ON MERITS.

Under Code Civ. Proc. § 1187, providing that the court, pending the decision of a motion to nonsuit, may submit any question of fact raised by the pleadings to the jury or require it to assess damages, the court had no power to dismiss the complaint on its merits after having submitted the case to the jury and received a general verdict for plaintiff.

2. MASTER AND SERVANT—DEATH OF SERVANT—NEGLIGENCE OF MASTER—EVIDENCE.

Plaintiff's intestate was engaged in moving a car heavily laden from one room to another in a paper factory, when the car caught in a hole in the floor, and, while intestate with his fellow servants were endeavoring to move the car, intestate's apron was caught by a revolving shaft, and he was killed. The shaft had been boxed, but a part of the casing had been torn away, leaving a hole five or six inches wide, extending from the floor upward some six or eight feet. *Held*, that such facts justified a verdict against the master for the servant's death.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Whether plaintiff's intestate was guilty of contributory negligence was for the jury.

Appeal from Trial Term, Orange county.

Action by Jacob Levy, as administrator of the goods, etc., of Antoni Prygon, against the Grove Mills Paper Company. From an order dismissing the complaint and setting aside a verdict in favor of plaintiff, he appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

A. H. F. Seeger, for appellant.

Artemas B. Smith (Harold H. Bowman, on the brief), for respondent.

HOOKER, J. The defendant moved at the close of the plaintiff's case for a dismissal of the complaint. The disposition of this motion was held until the close of the whole case, when the court reserved its decision upon the motion, subject to the verdict of the jury. The defendant objected, and excepted to the submission to the jury. A general verdict for the plaintiff was reported, and after this report the defendant again moved to dismiss the complaint. The court then, after stating its reasons, verbally directed that the verdict be set aside, and that the complaint be dismissed; exceptions to be heard in the first instance by the Appellate Division. Subsequently an order was entered pursuant to such decision, which recites that it was made on motion of defendant's attorneys, and directs that the complaint be dismissed upon the merits, and that the verdict be set aside.

The procedure upon the trial was not strictly within the provisions of section 1187 of the Code of Civil Procedure. It is there provided that the court may, pending the decision of the motion to nonsuit, submit any question of fact raised by the pleadings to the jury, or require it to assess the damages. Here, over the defendant's objection and exception, the court submitted the whole case to the jury, and

they rendered a general verdict.   Hoey v. Metropolitan Street R. Co., 70 App. Div. 60, 74 N. Y. Supp. 1113, is authority for the proposition that, where special findings are made by the jury, the court cannot thereafter, under the terms of section 1187 of the Code, dismiss the complaint upon the merits, and at page 62, 70 App. Div., and page 1114, 74 N. Y. Supp., it is said: "The court had no power to dismiss the complaint upon the merits."   If in an action where the proceedings are within the provisions of this section, and the court has received the verdict of the jury, it has no power to dismiss the complaint upon the merits, it must follow that where the court evidently is aiming to follow that procedure, but has not complied therewith, it cannot thereby become vested with any greater powers than it has under that section, and we think that the order dismissing the complaint upon the merits was, under the authority of the Hoey Case, improper, and should be reversed.

In December, 1900, the defendant owned and operated a factory for the manufacture of paper, in which it maintained two adjoining rooms, known as the "wash room" and "kettle room," the former directly west of the latter; the door connecting them was some 10 feet wide, and, flush with the southerly jamb of the door, extending into the kettle room, was a wooden box built from the floor to the ceiling, 22 inches square, which served as a guard or encasement of a steel shaft, performing over 200 revolutions per minute.   Out of the northerly face of this wooden casing was torn part of the material of which it was made, leaving a hole into the interior five or six inches wide, extending six or eight feet from the floor upward.   The shaft revolved about six inches back of the northerly face of the casement, and this had been the condition for five or six months.   The plaintiff's intestate had been employed for two or three months in the wash room, attending one of the machines operated there.   It did not appear that he was skilled in the use of machinery; it required no special ability to perform the work for which he was employed.   The material fed to these machines was taken direct from the kettle room, and on the 13th of December, 1900, the deceased and four or five, of his fellow workmen were endeavoring to move a car or box, heavily laden with the material, from the kettle into the wash room.   Before going far, and when the front part of the car had just cleared the doorway, whose doors were always open, one of the wheels of the car became caught in a hole in the flooring, and it was impossible to move it further. The deceased was pushing on this car at the southeast corner thereof, and was brought within about two feet from the hole in the casing. He, and many of the other employés of the wash room, then wore, as was their custom, a loose apron of bagging, tied around the waist and extending to the knees, for the purpose of protecting themselves from the water with which all the material was saturated.   While he and his companions were making every effort to move this car forward into the wash room, his apron was caught through the aperture in the casing by the revolving shaft, and he was instantly drawn against it with great violence and killed, before he had an opportunity to do more than utter a single exclamation of pain.   It nowhere appeared that deceased had any knowledge of the shaft, and no claim is

made that his attention or concern was in any manner directed to it in connection with the duties of his employment. These are the undisputed facts. The defendant rested its case upon the evidence offered by the plaintiff, and the court submitted the questions of contributory negligence, the defendant's negligence, and the amount of damages to the jury in a fair and proper manner. They rendered a general verdict for plaintiff, and we think it was error to set aside that verdict. The case of Johansen v. Eastmans Company, 44 App. Div. 270, 60 N. Y. Supp. 708, is strikingly in point, and it is unnecessary for us to discuss the questions there decided. They are controlling upon the facts in this case.

The question of contributory negligence on the part of the deceased, however, is raised in this case. The respondent contends that if, in the absence of direct proof, the circumstances from which freedom from contributory negligence is sought to be shown make an inference of the existence of such contributory negligence as reasonable as an inference of the lack of such negligence, or point in neither direction, a nonsuit should be granted (Cordell v. N. Y. Central & Hudson R. R. R. Co., 75 N. Y. 330), and urges that that rule is applicable to the facts in this case. The evidence was such, however, that the jury were justified in finding from it that the intestate was free from negligence, for it shows that the car which the plaintiff and his fellows were trying to move was exceedingly heavily loaded, and had become caught in a hole in the floor, and that it required the utmost effort of all engaged in the undertaking to start it. The plaintiff's intestate was seen to be working at the car and helping to move it, and the only reasonable inference is that his entire mind and powers were concentrated upon the undertaking. It was then a question for the jury to say whether his acts were those of an ordinarily prudent and cautious man, under the circumstances, and with their finding we may not interfere.

The plaintiff's exceptions should be sustained, and judgment directed upon the verdict, with costs, and, inasmuch as no judgment has yet been entered, the question of additional allowance should be, at plaintiff's election, determined at Special Term. All concur.