# THE

# New York Supplement

## VOLUME 120

---

### McCAHILL v. NEW YORK TRANSP. CO.

(Supreme Court, Appellate Division, First Department. December 17, 1909.)

1. DEATH (§ 103*)—NEGLIGENT DEATH—EVIDENCE—QUESTION FOR JURY.

Whether the injury negligently inflicted by defendant on decedent produced delirium tremens, which was the cause of death, *held*, under the evidence, for the jury, authorizing a recovery on a finding that the injury produced the disease causing death.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 141; Dec. Dig. § 103.*]

2. DEATH (§ 17*)—NEGLIGENT DEATH—RECOVERY.

Where decedent, but for the injury negligently inflicted by defendant, might have lived for many years, and the injury, plus his condition when he received it, caused a disease of which he died, a case within Code Civ. Proc. § 1902, giving an action for damages for death by wrongful act, was established.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 19, 21; Dec. Dig. § 17.*]

Ingraham and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Isabella McCahill, administratrix of John McCahill, deceased, against the New York Transportation Company, for the death of plaintiff's intestate caused by defendant's negligence. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Arthur K. Wing, for appellant.
G. Washbourne Smith, for respondent.

CLARKE, J. The evidence of decedent's freedom from contributory negligence and of the defendant's negligence was sufficient to require the case to be submitted to the jury, and we are satisfied that the verdict in favor of the plaintiff should not be disturbed upon either of said propositions. The important question in the case, as it is presented to us, is whether there was evidence that the decedent's death

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

120 N.Y.S.—1

was caused by the negligence of the defendant. The direct injury received was synovitis of the knee and a broken thigh, neither of which injuries is necessarily fatal. The medical evidence establishes that decedent died of delirium tremens. Delirium tremens results from the excessive use of alcohol, and from no other cause. Hence it is argued that the injury received was not the cause of death, and therefore that there is no cause of action against the defendant established.

The plaintiff, who is the widow of deceased, testified: That they had been married 23 years; that it was 11 years since deceased had had a doctor; that he was 47 years of age at the time of his death and had worked steadily; that she had never seen her husband intoxicated or under the influence of liquor; that he occasionally drank beer; and that he never had a red face.

Two other witnesses, one who had lived in the same house for 5 years with decedent, and his wife, and another who had seen him constantly for 23 years, testified that they had never seen him intoxicated. There was no other evidence as to his previous habits as a drinking man. The accident occurred shortly after 7 o'clock in the evening of January 9, 1906. He was taken to the Roosevelt Hospital in an ambulance, and the surgeon who received him testified: That when he was admitted he was unconscious, suffering from a broken thigh and traumatic synovitis of the knee. That he placed the patient in bed, had posterior splints put on his leg for the fracture of the femur, and ordered medication. That alcoholism is the direct cause of the delirium tremens. "By alcoholism I mean that a man need not of necessity be drunk in order to get it." That the patient rapidly developed delirium tremens. "I should say with reasonable certainty the injury precipitated his attack of delirium tremens, and, understand, I mean precipitated,' not induced. By injury I refer to the fracture of the femur and synovitis of the knee. A man may be perfectly sober at the time of an accident and meet with an accident and then develop delirium tremens. I saw him as soon as he was brought to the hospital. That was some time along about 8 o'clock at night. He was markedly alcoholic at that time. I said in my opinion that the injury to his broken bone and the synovitis of the knee precipitated this. I mean by the word 'precipitated,' hurried it up." He testified that nobody could tell whether the man might have had delirium tremens anyhow. "I could not find any reason outside of the existence of alcoholism and the condition of delirium tremens, which would prevent his getting entirely well, and all I am able to state now is that in my opinion the injury to the leg and the knee hurried up the delirium tremens. I have heard of cases, and know of cases, where men were perfectly sober, when they would get a certain shock or fright, and then meet with injury and then develop delirium tremens. Those cases are quite common."

Dr. Clarke, the house surgeon, testified: That he examined the patient on January 10th. "I found him suffering from fractured femur, traumatic synovitis of the knee, and alcoholism. He remained in my care until his death. That was on the 11th. I saw him during that interval about once every few hours. Delirium tremens caused his death. When I first saw him in the hospital, I am able to say with

reasonable certainty that he was markedly alcoholic. He developed delirium tremens that afternoon. He commenced to show the first signs of delirium tremens that afternoon, the afternoon of the following day."

Dr. Humphries, sent by defendant to examine decedent, saw him at the hospital after 9 o'clock on January 9th. "At that time he was under the influence of alcohol; that was markedly so. I saw him the following day. Then he was suffering at that time from delirium tremens. On the afternoon of the 10th he had developed delirium tremens and looked to be in a very critical condition. I did not find delirium tremens the first day."

Summarizing the medical testimony, it is to the effect: That, in the opinion of the doctors from what they observed, the man was in a markedly alcoholic condition when he was admitted to the hospital; that he was not then suffering from delirium tremens, which did not develop until the afternoon of the next day; that no one can say that the use of alcohol will necessarily produce delirium tremens; but that delirium tremens can only occur when there is a previous alcoholic condition; and that a severe injury of the character suffered by decedent in this case, while not an inducing cause of delirium tremens, will precipitate it.

Upon all the evidence, I think it was a question for the jury whether the injury caused by the negligence of the defendant did not produce the delirium tremens which, in the opinion of the doctors, was the immediate cause of death. If the decedent, but for the injury, might have lived for many years, and the injury, plus his condition when he received it, caused the delirium tremens, of which he died, I think the case comes within the meaning of section 1902 of the Code of Civil Procedure, which gives a cause of action to recover damages for a wrongful act, neglect, or default by which the decedent's death was caused.

In Tice v. Munn, 94 N. Y. 621, the trial court refused to charge that if the plaintiff was in an unhealthy and debilitated condition, and the injuries were more serious and lasting by reason of her bodily condition, then the defendant is only liable for such consequences of the injury as would have resulted if she had been in good bodily health, and stated the rule to be that if, by reason of a delicate condition of health, the consequences of a negligent injury are more serious, still for these consequences the defendant is liable, although they are aggravated by the imperfect bodily condition, and the Court of Appeals said:

"It amounted to saying that the negligent party is responsible for the proximate consequences of his act, even though those consequences are more severe and aggravated by reason of delicate health than they would have been if the sufferer had been sound and well. This does not allow damages for what the defendant did not proximately cause, but holds him responsible for such consequences in the particular case."

In Turner v. Nassau Electric Company, 41 App. Div. 213, 58 N. Y. Supp. 490, the testimony was: That the decedent died of acute delirium tremens; that the injury was undoubtedly an exciting cause; that the injury was a blow upon the head, a laceration of the right parietal and

temporal region and two small cracks in the outer table of the skull; that the injury to the tissues themselves were not sufficient to cause death, outside of other predisposing causes. His brain was not injured. Independently such injuries would not have been sufficient to cause death. The court said:

"We think it must be held that the negligence of the defendant's servants was the proximate cause of the death within the authorities cited. * * * Non constat that the decedent, except for the injury, would have had delirium tremens when he did. Non constat that he would have had delirium tremens at all, had it not been precipitated by the injury. If the accident to the deceased had been caused while he was, and by reason of his being, intoxicated, so that his condition might be considered as contributing to the accident, a different question would have arisen; but it requires altogether too great a stretch of moral responsibility and necessitates the investigation of cause and effect, and would carry us into metaphysical and psychological speculation, to an extent outside the possibility of judicial inquiry, to hold that the susceptibility to delirium tremens is different from any other physical condition caused by unwise or improper habits. When disease has supervened from any cause, any aggravation of that condition by the negligence of another is a cause of action for damages, provided such damages are solely set in motion and caused by the injury."

I do not think that reckless drivers of automobiles are to be relieved of responsibility because their victims are sick, infirm, diseased, or even addicted to the use of alcoholic drinks, when it fairly appears that their condition was aggravated or death precipitated as a result of the injury received.

The judgment and order appealed from should be affirmed, with costs and disbursements to the respondent.

HOUGHTON and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). The plaintiff's intestate was struck by an automobile operated by the defendant on January 9, 1906, on Broadway near Forty-Ninth street. As a result of the accident, his femur was broken, and there developed traumatic synovitis of the kneejoint. He was taken to the hospital, and was found by the surgeon in charge to be suffering from alcoholism. Subsequently delirium tremens developed, and he died on January 11, 1906, between 8 and 9 p. m. I think there was evidence to justify the submission of the case to the jury as to the defendant's negligence and the deceased's freedom from contributory negligence. The only serious question is whether death was caused by the injuries received in consequence of the accident.

The plaintiff called as a witness the surgeon attached to the hospital who was in charge when the deceased was brought there. This surgeon testified: That when the deceased was admitted to the hospital he was unconscious; that the left femur was fractured, and he had synovitis, which is the inflammation of the membrane which incloses the kneejoint; that at the time he was admitted he was suffering from marked alcoholism and rapidly developed delirium tremens; that delirium tremens is caused by the long-continued use of alcohol; that, a person being in such a condition, any violent accident precipitates or hurries up the attack of delirium tremens. The physician also testified: That the deceased had been a very long and chronic user of al-

cohol. That "we don't get delirium tremens, in any case, in the absence of the long-continued, excessive use of alcohol. That is absolutely positive. And we don't get a sober, straight, abstinent man to meet with an accident, or to have no accident, and be taken to the hospital in any other condition, and die of delirium tremens. I said in my opinion that the injury, this broken bone and synovitis of the knee, may have precipitated this. I mean by the word 'precipitated,' hurried it up." That a fracture of the femur and synovitis of the knee are never fatal, and, in the absence of the existence of delirium tremens, he judged that man would have gotten entirely well. That he could not find any reason, outside of the existence of alcoholism and the condition of delirium tremens, which would have prevented his getting entirely well. That all he was able to state was that in his opinion the injury to the leg and the knee hurried up the delirium tremens. That there was no doubt about it, that the cause of delirium tremens was alcoholism.

Dr. Clarke, who was the house surgeon at the hospital and had charge of the deceased, testified: That he was not in the hospital when the deceased was brought in, but first saw him on the following morning; that he found him suffering from a fracture of the femur, traumatic synovitis, and alcoholism; that delirium tremens caused his death; that he was markedly alcoholic on the morning of the 10th when the witness first saw him, and developed delirium tremens during that afternoon; that he died of delirium tremens on January 11th; that the deceased was not suffering from shock when the doctor first saw him.

Another physician, who was an expert in mental diseases, testified: that he saw the deceased on the evening of January 9, 1906; that he found the deceased with a splint on his left leg, a bandage around the knee, and markedly under the influence of alcohol; that the essential cause of delirium tremens is the overindulgence in alcohol of some character; that his alcoholic condition was very apparent; that delirium tremens never occurs without excessive alcoholism; that he saw the deceased again on the following day and found him then suffering from delirium tremens and in a very critical condition; that delirium tremens cannot be produced by anything but alcohol; that the condition in which he found the deceased on January 10th could have been due to nothing but alcoholism.

We have thus the uncontradicted evidence: That the plaintiff's intestate was struck by an automobile on the evening of January 9, 1906, and at once taken to the hospital, where he was found to be suffering from alcoholism; his condition indicating a long and excessive use of alcohol. He had a broken femur and synovitis, neither of which was a fatal injury. During the 10th of January his marked alcoholic condition continued, and on the afternoon of the 10th he developed delirium tremens, from which he died on the evening of the 11th. That an accident of this kind could not produce delirium tremens, as that disease or condition could only be caused by the prolonged and excessive use of alcohol. The question presented therefore

is whether, upon this undisputed condition, there was evidence to justify a verdict that the death of the deceased was caused by the injury.

This action to recover for the death of a decedent is given by section 1902 of the Code of Civil Procedure, which provides that:

"The executor or administrator of a decedent * * * may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued."

To sustain the cause of action therefore the plaintiff must prove that the wrongful act, neglect, or default of the defendant caused the decedent's death; and I think this evidence fails to sustain such a verdict. The evidence is uncontradicted that delirium tremens was the cause of death. The accident could not have caused the delirium tremens, and the accident could not therefore have caused the death of the deceased. One doctor says that the accident may have "precipitated," meaning by that hurried up, the attack of delirium tremens; but the evidence is undisputed that the accident could not have caused the attack of delirium tremens, and delirium tremens was the cause of death. There is not a single witness in this case who testified that in his opinion the accident caused the death of the deceased, or that the accident had any connection with his death, except that it may have hurried up the attack of delirium tremens which caused the death.

An examination of the authorities in a case of this kind is of little use, as each case must depend upon the particular facts proved upon the trial, with the opinions of experts based upon such facts. The case of Seifter v. Brooklyn Heights R. R. Co., 169 N. Y. 254, 62 N. E. 349, is, however, instructive. In that case the deceased sustained, in consequence of the accident, a simple fracture of the left fibula. The deceased was treated in the hospital for some weeks; but after his removal an examination of the fracture was made, and the bone seemed to have united, there remaining the usual swelling and soreness incident to the presence of the plaster splints. Subsequently a swelling appeared on the deceased's thigh and lumps on the groin, followed by chills, which remained until the deceased died. It was testified on the trial that the cause of death was septic pneumonia, and the question that was then presented was whether the fracture was the proximate cause of the septic pneumonia which resulted in his death. The court said, in citing Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216:

"A 'proximate cause' is one in which is involved the idea of necessity. It is one the connection between which and the effect is plain and intelligible. It is one which can be used as a term by which a proposition can be demonstrated; that is, one which can be reasoned from conclusively. * * * The proximate cause being given, the effect must follow."

And then, after defining a remote cause, it is said:

"The remote cause being given, the effect may or may not follow."

And although in that case there was expert testimony based upon the hypothetical questions which would justify the conclusion that this septic pneumonia had direct connection with the accident, the

court held that the evidence was not sufficient to sustain the verdict, saying:

"Death from pneumonia is not ordinarily the necessary and natural result of an injury to the fibula bone, and when, as in this case, it is sought to establish almost entirely by expert evidence that such result actually followed, the connection between cause and effect should be made so clear that the conclusion can be said to be the reasonable result of the proof."

And this principle was applied by this court in Hoey, Adm'x, v. Met. St. Ry. Co., 70 App. Div. 63, 74 N. Y. Supp. 1113, McQuade v. Met. St. Ry. Co., 84 App. Div. 637, 82 N. Y. Supp. 720, and Koch v. Zimmerman, 85 App. Div. 370, 83 N. Y. Supp. 339.

The plaintiff relies principally upon Turner v. Nassau El. R. R. Co., 41 App. Div. 213, 58 N. Y. Supp. 490; but in that case the expert testimony was sufficient, if believed, to sustain a finding that the injury caused the death, the experts having testified in that case that the deceased would not have had delirium tremens except for the accident. Assuming that such testimony would have sustained this verdict, its absence in this case prevents the Turner Case from being an authority for the plaintiff.

I think therefore that the verdict of the jury that the injury was the proximate cause of the decedent's death was not sustained by the evidence and the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs.