SAMUEL W. HAYES, Chief Justice.
MATTHEW J. KANE, Vice Chief Justice.
R. L. WILLIAMS,
JOHN B. TURNER,        }Justices.
R. H. LOOFBOURROW,

### ATCHISON, T. & S. F. RY. Co. v. MELSON.

No. 2647. Opinion Filed July 29, 1913.

Rehearing Denied October 7, 1913.

(134 Pac. 388.)

1. DAMAGES—Physical Examination—Power to Require. The courts of this state cannot, in the absence of statutory or constitutional provision so authorizing, order a plaintiff in an action for damages to his person to submit in advance of or during the trial of the cause to examination by a physician, to be appointed by the court.

2. WITNESSES—Cross-Examination—Physical Examination. In the trial of a personal injury action, upon the cross-examination of plaintiff, it is competent to ask him whether he is willing to submit to a physical examination of his injuries by a physician, to be appointed by the court or agreed upon by the parties.

3. DAMAGES—Injury to Passenger—Submission of Elements of Damage—Sufficiency of Evidence. Evidence examined and held insufficient to submit to the jury as elements of plaintiff's damages whether as a result of her injuries she suffered from kidney disease and paralysis.

4.　　**CARRIERS**—Injury to Passenger—Submission of · Issue of Negligence—Sufficiency of Evidence. Evidence examined and held sufficient to send the case to the jury under proper instructions as to whether plaintiff's injuries were caused by the negligence of defendant.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County;*
*Chas. B. Wilson, Jr., Judge.*

Action by Mary J. Melson against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This action was brought in the court below by defendant in error, hereinafter called plaintiff, against plaintiff in error, hereinafter called defendant, to recover damages on account of personal injuries plaintiff alleges she received while a passenger upon one of defendant's passenger trains.

Omitting the formal allegations of paragraphs one and two of her complaint, she alleges substantially in the third paragraph that, while traveling from the town of Shawnee to the town of Payson in this state on one of the passenger trains of defendant, about the time she was ready to alight from said passenger train and while at the town of Payson in said state she was injured in the manner subsequently alleged.

The fourth paragraph, as amended, is as follows:

"That before she could alight from said passenger train she was informed by one of its employees, unknown to her outside of said passenger train, that it was about to start, using the language 'All aboard!' and that the bell of said train was ringing, which ringing of the bell and calling out was and is a signal that the train is about to move, and that said brakeman or person who attempted to assist her from said train roughly handled her, and informed her that she must get off, that the train was about to start; and acting on said information—that it was about to start—and due to the rough handling and carelessness of said employee and the improper appliance the said company had provided for passengers to step upon, which appliance was a box, and it was defective, in that it was not high enough and left a space of about twenty inches or two feet from the lowest step of said passenger train to the same, so that by reason of these particulars she was caused to fall to the ground, together with said employee, along-

side of said train on her back, and striking as she fell her back and leg against the steps of said coach of the said passenger train or the ground, she is unable to allege which, and skinned and bruised her left leg or hip and injured her back and spine and kidneys in about the fifth lumbar region of her spine, so that therefrom she was unable to get up or walk as a result of said injury, and has suffered great physical pain and mental anguish therefrom, and by reason of said injuries so received at said time she has been unable to walk without assistance, and has been compelled to secure treatment at a hospital, and has remained in said hospital continuously since said injury for the purpose of treatment at an expense of $30 per week, and on or about the 25th day of October suffered a stroke of paralysis in her left leg and side and arm, and has since said time been deprived of the use of same, and that said stroke of paralysis is the result of and due to said injuries, and she alleges and believes that another stroke of paralysis will follow, which would, as she is informed, be destructive to her life in all reasonable probability; that the same appliance alleged in her original petition in paragraph fifth, which defendant failed to provide for her proper deportation from said train, was defective, in that the box was not high enough to reach near to the steps of said passenger train, and was about twenty inches from the lowest step of the coach of said passenger train; that she does not know fully at this time the extent of her injuries, more than has been alleged in her original petition; nor does she know the names of the employees of the defendant who contributed to her injuries by their negligence."

The fifth paragraph of the original petition, referred to in the foregoing paragraph, and which remained a part of the original petition as amended, reads as follows:

"That at the time she was injured it was the duty of the defendant to provide a reasonably safe exit from said passenger train to transfer its passengers, and to exercise reasonable care in assisting them to alight from said passenger train, and to keep said passenger train stopped long enough to prevent injuries to passengers alighting therefrom, and to provide reasonably good appliances to assist passengers alighting therefrom, and to exercise ordinary care and caution in performing said service. That the defendant was guilty of gross negligence and carelessness in failing to provide safe appliances and proper and competent employees and safe exit, and to exercise reasonable and ordinary care in stopping and starting said passenger train while the passengers were alighting therefrom, and that in these particulars

the defendant was guilty of negligence toward the plaintiff, and that the said negligent acts in the said particulars caused the injuries hereinbefore alleged, and that said negligent acts on the part of the defendant caused the plaintiff to suffer great mental anguish and physical pain, and, as a result of the same plaintiff is permanently injured and unable to care for herself or perform physical work, and has been caused to incur and expend about the sum of $30 per week for treatment and nursing since said injury, and will in the future be compelled to pay out and expend about the sum of $30 per week for medical attendance and treatment."

By other paragraphs of the petition she alleges that at the time of her injury she was 72 years of age, weighed 172 pounds; that her age and size were apparent to defendant and its employees and known to them; that prior to the time of her injury she cautioned and warned defendant's employees, whom she believed to be the conductor and brakeman, that she could not get off the train easily, and for them to exercise care and caution in assisting her to alight from said train.

Defendant's answer denies that plaintiff was injured in the manner alleged in her petition; denies any negligence on its part, and alleges that her injuries, if any, were due to her own negligence, in that, without taking due care and caution to see where she was stepping, she made a misstep in getting off the car, which caused her to fall. Plaintiff's reply denies all contributory negligence on her part.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $1,200, to reverse which this proceeding is prosecuted.

*Cottingham & Bledsoe, Charles H. Woods,* and *Edward Howell,* for plaintiff in error.

*H. H. Smith,* for defendant in error.

HAYES, C. J. (after stating the facts as above). The contention of plaintiff is that by reason of the fall she was bruised across the hips and injured in her back, from which subsequently resulted injury to her kidneys and a stroke of paralysis. The injuries for which she seeks to recover are not such as can be fully observed without a physical examination of plaintiff. Upon

this point defendant requested the court to require plaintiff to be physically examined by disinterested physicians, to be agreed upon by the parties to the suit or selected by the court. Upon the court's being informed that plaintiff would not consent to such an examination, the motion of defendant therefor was denied upon the ground that the court was without power to require plaintiff to submit to such an examination, and this action of the court constitutes the first alleged error urged for reversal of the cause.

The sole question presented by defendant's contention under this assignment is whether, in the absence of a statute or constitutional provision so providing, the trial court had the power to order the examination of plaintiff by a physician, to be selected by the parties or by the court, to ascertain the extent of her injury, in order that such physician might testify at the trial relative to plaintiff's injuries. The decision of the trial court is in harmony with the rule adopted in *City of Kingfisher v. Altizer,* 13 Okla. 121, 74 Pac. 107, where it was held that courts of the territory could not order a plaintiff, in an action for injuries to his person, to submit to surgical examination in advance of or during the trial of the cause. We are asked by counsel for defendant to overrule this case, and to hold that the courts of the state possess this power. It is true, as suggested by counsel, that the decision in the Altizer case appears to have been reached because of the binding force of the doctrine announced in *Union Pac. Ry. Co. v. Botsford,* 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734. It appears, as has been asserted by some of the textwriters, that the weight of decisions from the state courts announces a doctrine contrary to that of the Altizer and Botsford cases. A citation of most of the cases supporting the respective doctrines upon this question may be found in the following cases and notes thereto: *Austin & N. W. Ry. Co. et al. v. Cluck,* 97 Tex. 172, 77 S. W. 403, 64 L. R. A. 494, 104 Am. St. Rep. 863, 1 Ann. Cas. 261; *May v. N. Pac. Ry. Co.,* 32 Mont. 522, 81 Pac. 328, 70 L. R. A. 111, 4 Ann. Cas. 605; *Larson v. Salt Lake City et al.,* 34 Utah, 318, 97 Pac. 483, 23 L. R. A. (N. S.) 462.

The development of the doctrine of the state courts, which assert the existence of the power, is fully reviewed in *May v.*

*N. Pac. Ry. Co., supra.* From an examination of this case and the other cases cited above, it will be ascertained that the existence of the power, independent of statute or of constitutional provision, has been affirmed in Alabama, Arkansas, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, North Dakota, Washington, and Wisconsin, and has been denied in Illinois, Massachusetts, Texas, New York, Utah, Montana, Oklahoma, and in the federal courts. None of the courts that affirm the existence of the power, so far as we have been able to examine the authorities, attempt to support their assertion with common-law precedent. Some of them content themselves with the bare assertion of its existence; others strongly reason the necessity of such power to enable the courts to administer full and complete justice and to prevent the practice of frauds in personal injury actions. No case has been called to our attention, and none that we have been able to find satisfactorily accounts for the source of this power, or satisfactorily evolves the doctrine by the application of principles recognized at common law to new conditions. It is true that, on account of numerous inventions and the important part that complicated and dangerous machinery now plays in the commerce of the world, personal injury actions are more numerous than they were before the establishment of the federal government; but actions for personal injuries existed at common law, and, as has been stated by some of the courts, this power now claimed for the courts does not appear to have ever been exercised by the common-law courts of England, and that no precedent can be found from the English courts supporting its existence is persuasive that no such power existed. *Union Pac. Ry. Co. v. Botsford, supra.* Among those courts asserting the existence of the power, there is division upon questions pertaining to its application. Particularly is this true as to the extent to which the examination may be carried, and as to how obedience to the order for examination may be enforced. By some of these courts it is asserted that anaesthetics, drugs, and surgical instruments cannot be used in the examination. *Schroeder v. C., R. I. & P. R. Co.,* 47 Iowa, 375; *Strudgeon v. Village of Sand Beach,* 107 Mich. 496, 64 N. W. 1061, 61 Am. St. Rep. 320; *O'Brien v.*

*City of La Crosse,* 99 Wis. 421, 75 N. W. 81, 40 L. R. A. 831. While in *Atchison, T. & S. F. Ry. Co. v. Palmore,* 68 Kan. 545, 75 Pac. 509, 64 L. R. A. 90, the injection of a drug into an injured eye was held to be authorized. Some of the courts assert that obedience to the order is to be enforced by contempt proceedings, while others hold that failure to obey the order authorizes a dismissal of plaintiff's action. Recognizing as we do that the weight of the state authorities supports the existence of the power and is against the doctrine announced in the Altizer case, in view of the fact that the rule in the Altizer case has stood in this jurisdiction since 1903 and is supported by the decisions of a respectable number of the courts of unquestionable high standing and ability, and in view of the fact that the courts supporting the majority doctrine affirm the existence of the power principally upon reasons of necessity, as it seems to them, rather than upon judicial precedent under the common law or upon the application of recognized principles of common law, we are not of the opinion that we should overrule the doctrine announced in the Altizer case. During the several years that the doctrine of that case has existed in this jurisdiction, no one seems to have ever undertaken to overturn it by the courts; nor has it been disturbed by legislative enactment. We, therefore, adhere to the rule that, without authority conferred by statute or constitutional provision, the courts of this state are without power, in an action for personal injury, to compel plaintiff to submit to a physical examination by medical experts in advance of or during the trial of the cause.

On cross-examination plaintiff was asked by defendant's counsel if she was willing to submit to an examination of physicians, to be appointed by the court. An objection to this question was sustained. In this the court committed error. That such question is competent is established in this jurisdiction, and seems to be supported by the decisions of all the courts denying the existence of the power to require an examination in the absence of legislative enactment. *Chicago, R. I. & P. Ry. Co. v. Hill,* 36 Okla. 540, 129 Pac. 13; *Kingfisher v. Altizer, supra; Austin & N. W. R. Co. et al. v. Cluck, supra.*

The injuries which plaintiff alleged she received and for which she seeks to recover are that her left leg and hip were bruised, injury to her back and spine and kidneys in and about the lumbar region of her spine, and that about a month after the accident she suffered a stroke of paralysis in her left leg, side, and arm as a result of said injuries.

Defendant requested an instruction to the effect that there was no competent evidence that the injury to her kidneys, if any, or that the paralysis was caused by plaintiff's fall and the injuries she received, and that no damages therefor should be allowed. This instruction was refused, and an instruction given sufficiently broad in its scope to allow the jury to assess damages for these alleged injuries. There is testimony that by the fall plaintiff was bruised upon the leg, hip, across the back, and upon one of her shoulders. A physician, to whose sanitarium she went about a week after the accident, testified that at that time there were bruises and dark spots at these places on her body. Both she and this physician also testified that about a month after the accident she suffered from a stroke of paralysis, which, for a period of three or four days, prevented her from walking. Dr. Keene, the physician just referred to, testified that shortly after her return to his sanitarium he observed blood in her urine. No other physician testified on behalf of plaintiff, and no other physician testified in the case who had examined plaintiff or knew anything of her condition. Dr. Keene at first testified as to the source or probable source of the blood that appeared in the urine and the cause thereof. But later in the trial, upon motion of defendant's counsel and upon the agreement of counsel for plaintiff, all of the testimony of Dr. Keene of an expert character was stricken from the case, and this agreement—that none of his evidence calling for expert conclusions should be considered—was enforced throughout the subsequent proceedings of the trial.

We have read the record carefully and have been unable to find any evidence to establish that the blood observed by Dr. Keene in the plaintiff's urine came from plaintiff's kidneys, or that her kidneys were injured by the accident. There is evidence of plaintiff that she suffered pain in her back in about the region

of her kidneys; but whether or not her kidneys were affected no evidence has been set out in the briefs to establish, and we have been unable to find any in the record. There is evidence that about a month after plaintiff received her injuries she suffered a stroke of paralysis, which, for three or four days, prevented the use of her lower limbs, and affected the use of one of her arms, and to some extent affected her entire body. But there is an entire absence in the record of any evidence to show that this stroke of paralysis was the result of the injuries alleged to have been received by plaintiff in the accident.

Plaintiff is a woman 72 years of age and weighing about 170 pounds. She had been a sufferer from rheumatism for several years before the accident, and had, immediately prior to the accident, been under the treatment of the physician, Dr. Keene, for a disease of the skin in the nature of eczema. By reason of her rheumatic condition, she was weak and unable to handle herself well at the time of the accident. When the train upon which plaintiff was riding reached the town of Payson, plaintiff's destination, she came slowly out of the train, being the last passenger to leave the coach, and when she reached the bottom step, leading from the platform of the coach to the platform of the station, she fell along beside the train upon her side and back. She was helped up by employees of the train, aided by other persons who were present at the station for the purpose of embarking on the train. After she was helped up she walked to a buggy, into which she was helped by persons, and thereupon went to the residence of her son, where she remained for approximately a week. She made no complaint of having received any injuries at the time of the fall; no complaint of suffering any pain. After remaining at her son's for approximately a week, she returned to the town of Shawnee and went to the sanitarium of Dr. Keene, who shortly thereafter examined her and discovered the bruises above mentioned, and thereafter treated her. The evidence establishes that the platform of the depot where plaintiff fell was made of cinders, which had been rolled and had a level surface.

One Dr. Rolland, who testified on behalf of defendant, on cross-examination was asked several questions for the purpose of

establishing that the character of the fall she received was suffi-
cient to inflict and cause the bruises upon her body and the alleged
injury to her kidneys. Among the questions asked and answers
thereto are the following:

"Q. Not necessarily any projection; anything, a cinder, or
spikes, or a bottle of ink, or anything, or the ground itself—
could the kidney there not strike anything, but the result be
from compression? A. It would be very unlikely if she struck
on a level substance; it could be if there was any projection, if she
fell on a hard substance like you say, a coal, or the end of a tie,
or something like that, any hard projection. Q. Well, if there
is a bruise over the kidney three or four days after that, and
a fall like that was had under those circumstances, would you say
that would be such an injury as might injure the kidney? A.
Yes, sir. Q. And it would be likely, wouldn't it, ordinarily,
Doctor, if you were to find the bruise? A. Yes, sir; a bruise
over the kidney."

Immediately the following questions were asked on redirect
examination:

"Q. A bruise might or might not indicate anything in the
case of an old woman, as to whether or not it was a violent fall
or otherwise; it might be a bruise, in the case of an old woman,
that might not be caused by a violent fall or blow? A. The
effects of violence or blows show on the flesh of old people longer
than they do on younger people. Q. So the fact that there was
a bruise over the kidney would not necessarily indicate that there
was an injury to the kidney in the case of an old woman? A.
Certainly not."

The foregoing evidence tends to establish that a bruise of the
character described might injure the kidneys, and that such
bruises might result from a fall, described in the questions above;
but it does not in fact establish that the kidneys of plaintiff were
injured. As to the cause of the paralysis the record is silent,
except the mere circumstance that it occurred about a month
after plaintiff received her fall. The general rule is stated in
Cyc. vol. 13, p. 216, as follows:

"The evidence, to justify a court in submitting to the jury
the question of whether or not a certain bodily condition com-
plained of is the result of the injury, should show the connection
between the two with reasonable certainty, and not leave it to
vague speculation or conjecture."

And by the same text, it is stated in the following paragraph:

"Sufficiency of the evidence to prove that a disease from which the injured party is suffering or from which he died was caused by the injury depends of course upon the distinguishing facts of each individual case; the mere fact that a certain diseased condition might consistently arise from the injury is insufficient. The evidence should so exclude other causes, and the circumstances be such that a reasonable inference arises that the injury caused the disease."

In *Willet v. Johnson,* 13 Okla. 563, 76 Pac. 174, plaintiff sought to recover for injuries alleged to have been sustained by her through an assault and battery. Plaintiff and her daughter, neither of whom possessed any special skill and knowledge with reference to diseases, testified that subsequent to the assault plaintiff suffered from inflammation of the uterus, Fallopian tubes, bladder and its appendages. In the opinion it is said:

"The mere fact that the plaintiff was afflicted in the manner shown and was suffering therefrom does not prove the cause of the injuries, and here is where the trouble arises in this case and where the evidence of the plaintiff fails to support the allegations of the petition. It follows necessarily, from the fact that neither the plaintiff nor her daughter had any special skill or knowledge with reference to the diseases with which plaintiff was afflicted, that the testimony which was given by them upon this subject would be of no value and of no aid to the jury in determining what caused the injuries from which the plaintiff was suffering or their extent. To maintain her action in this particular, under the circumstances of this case as disclosed by the record, the plaintiff should have offered evidence of skilled witnesses to show that her condition was the result of the assault; indeed, the court so instructed the jury when it said that before the jury could find a verdict in favor of the plaintiff they must find the injuries complained of were the direct, immediate, and proximate result of the assault and battery. While the learned judge well understood the rule governing this branch, yet he failed to make proper application of it when he allowed the jury to consider this question, inasmuch as there was an entire want of evidence upon this point. It is impossible for persons unskilled in the profession of medicine or surgery to determine the cause of such diseases as the plaintiff in this case was suffering from, and these questions, being questions of science, must necessarily

be determined by the testimony of skilled and professional men, and they can determine the fact sufficiently for them to form an opinion only by a careful examination and information derived from the patient."

Other authorities to similar effect are: *Trapnell v. City of Red Oak Junction,* 76 Iowa, 744, 39 N. W. 884; *Hoey v. Metropolitan St. Ry. Co. et al.,* 70 App. Div. 60, 74 N. Y. Supp. 1113; *Houston v. Traphagen,* 47 N. J. Law, 23; *Moore v. St. Louis Transit Co.,* 226 Mo. 689, 126 S. W. 1013.

Dr. Rolland, who was the only person who qualified to give expert testimony, testifying on behalf of defendant, testified that blood in the urine might result from several different causes. Among the causes named were inflammation of the bladder, Bright's disease, polypoid growths in the bladder, renal calculus, injury to the bladder or the kidneys. But he had not examined plaintiff, was unacquainted with her injuries or her physical condition, and did not undertake to testify as to the source of the blood discovered in her urine by the witness Keene. The witness Keene testified that after plaintiff received the injuries, while at his sanitarium, he treated her with hot baths; some of the baths being given at a high temperature. Dr. Rolland testified that hot baths, given to a person of plaintiff's age, would most likely cause hemorrhage of the brain, resulting in paralysis. He further testified that if paralysis resulted from a blow in the back or across the spine it would follow immediately such injury; whereas the temporary paralysis in this case occurred about a month after plaintiff's injury. No one testified that the injury plaintiff received was at such a place and was of such a character as would likely result in paralysis, and there is absence of evidence from any one that such injury was the cause of the paralysis. There is competent evidence that by the fall plaintiff was bruised upon her leg, upon her hip, and across the back, and that from these bruises she suffered pain. These facts constituted proper elements of damage to be considered by the jury; but the alleged elements of damage, consisting of disease of the kidneys and paralysis, are not supported by any evidence tending to show that such diseases resulted from the injuries received by plaintiff's fall, and

they should have been taken from the consideration of the jury by the instruction requested.

Defendant also contends that there is an absence of sufficient evidence of any negligence on its part for the case to have been submitted to the jury. In this contention we cannot concur. By reading the paragraphs of the petition above stated, it will be observed that the specific acts of negligence relied upon for recovery are somewhat obscurely pleaded. Plaintiff alleges that before she could depart from the train one of the employees used the language "All aboard!" and that the bell of the train was ringing, which ringing was a signal that the train was about to move. What influence these acts had upon her action, she does not allege, or in what way they contributed to her fall is not alleged; but she further alleges that the employees of plaintiff who attempted to assist her from the train roughly handled her and informed her that she must get off, for the train was about to start, and that, acting upon that information—that the train was about to start—and due to the rough handling and carelessness of said employees and a defective box furnished by defendant upon which to step from the platform, she was caused to fall to the ground. She alleges that the box was defective, in that it was not high enough and left a space of about twenty inches or two feet from the last step of the train to the top of the box. The evidence fails to establish any defect in the box used. Some of the witnesses for plaintiff testified that they did not see the box; but they do not testify that it was not there. The evidence is that the box was of regulation size, came within about twelve inches from the last step of the train. While there is absence of any evidence of negligence relative to the box used for a footstool in aiding the passengers to depart from the train, plaintiff testified that as she came down the step of the train the brakeman told her to hurry up, and that he jerked her and jerked her down. She is corroborated by one witness in her statement that the brakeman told her to hurry up. On the other hand, several witnesses who were near by testified that if the brakeman used such language they did not hear him, and to the effect that he handled her in a careful manner, and did not jerk her. But the

credibility of these witnesses and the weight of this testimony was properly for the jury.   The brakeman was informed by the daughter of plaintiff when plaintiff came upon the train that she was old and rheumatic, and would need the special attention of him when she would depart from the train.   The same information was given to the conductor of the train.   Under these circumstances, whether the manner in which plaintiff was aided in departing from the train was negligence was a question for the jury.

For the errors mentioned, the judgment of the trial court is reversed, and the cause remanded.

TURNER, J., concurs.   KANE, J., concurs in the conclusion reached.   WILLIAMS, J., concurs upon the reasons filed. DUNN, J., absent.

₀ WILLIAMS, J. (concurring).   I concur in the conclusion reached that the cause should be reversed, and a new trial awarded, on the ground that competent evidence was excluded, which constituted a substantial violation of a constitutional or statutory right (section 6, article 2 [Bill of Rights], of the Constitution of this state; section 14, Williams' Ann. Const. Okla.) in that competent evidence upon a material issue, where there was a sharp conflict in the proof, was excluded.   Such being the case, it cannot be said that a fair trial was had.   Under the mandatory self-executing provision of said section 6, all parties are guaranteed a fair trial.   Neither the court nor the Legislature have the power to suspend this provision of the Constitution, and I am confirmed in this view in that the states of Arizona, California, and Oregon have recognized the necessity of granting such power to appellate courts by means of a constitutional provision, if such courts are to exercise such authority.

Section 22 of article 6 of the Constitution of Arizona is as follows:

"The pleadings and proceedings in criminal causes in the courts shall be as provided by law.   No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

Concurring Opinion.

By virtue of this grant of power the Supreme Court of Arizona has exercised its discretion to determine whether or not a cause should be reversed when competent evidence upon a material issue is excluded. See *Albert Steinfield & Co. v. Wing Wong,* 128 Pac. 354; *Ariz. E. R. Co. v. Globe Hardware Co.,* 129 Pac. 1104; *Erickson v. State,* 127 Pac. 754.

Section 3, article 7, of the Constitution of Oregon, as recently amended, provides as follows:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of the opinion, after consideration of all the matters thus submitted that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed and the Supreme Court shall be of the opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court; provided that nothing in this section shall be construed to authorize the Supreme Court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court."

Section 4½ of article 7 of the Constitution of California provides:

"No judgment shall be set aside, or new trial granted in any criminal case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter of pleadings or procedure, unless, after an examination of the entire case including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

Section 19, article 2 (Bill of Rights), of the Constitution of this state (section 27, Williams' Ann. Ed.) provides:

"The right of trial by jury shall be and remain inviolate. * * *"

In view of section 6 of our Bill of Rights, which guarantees to every litigant, both plaintiff and defendant, a fair trial, and section 19 of the Bill of Rights, which guarantees that the right of trial by jury shall remain inviolate, I feel that this court would be guilty of an act of usurpation, if it were to affirm a judgment in a case where competent evidence upon a material issue had been excluded from the jury's consideration, for the party who had been denied the benefit of this evidence would not have had a trial before a jury. Whenever the people of this state, through the agencies provided for the amendment of the Constitution, adopt an amendment or provision, as has been done in Arizona, California, and Oregon, which grants the power to this court to scan the record, examine the evidence, weigh the same, and try the issue, just as the jury are permitted to try and hear it, then we will have such right to affirm a case, though competent evidence on a material issue has been excluded from the jury's consideration. Courts are bound by the law. The people have made the Constitution of this state, which is supreme, except as to federal matters. The Constitution flowing from the sovereign people, when the courts obey the Constitution they are the servants of the people. When through legislative enactment or by judicial construction they depart from the mandates of the Constitution, they have ceased to be the servants of sovereignty, but have set up themselves in defiance of such expressed will, though it be to meet a popular clamor.

In *Austin & Northwestern R. Co. et al. v. Cluck*, 97 Tex. 172, 77 S. W. 403, 64 L. R. A. 494, 104 Am. St. Rep. 863, 1 Ann. Cas. 261, in an opinion by Chief Justice Brown, it was held:

"The refusal of a party to submit to a physical examination is a fact which the opposing party is entitled to have go to the jury to be considered by them in weighing the evidence in the case."

On the trial of the cause the following question was propounded to the defendant in error on cross-examination, he having testified in chief in his own behalf:

"I will ask you whether or not a proposition has been made to you to have the court, without the suggestion of counsel for defendants, appoint a committee or board of skilled physicians to examine you physically with a view of ascertaining the nature and extent of the ailments of which you complain and their cause?"

The opinion of the court continues:

"To this question counsel for plaintiff objected on the ground 'that the same was incompetent, irrelevant, and immaterial, and that the purpose of it was to prejudice the plaintiff's case before the jury; that the matter had already been ruled upon by the court, and could not again be inquired into; and that the right to decline to submit himself to a physical examination by physicians to be appointed by the court was a legal right.' The objections were sustained by the court. In this ruling the court erred. The reason for refusing a physical examination of the plaintiff is not that the defendant is not entitled to have the benefit of the evidence, but because the court has no power to force the plaintiff to submit to such an examination. He has the right to submit or refuse; but in case he should refuse the defendant is entitled to have that fact go to the jury to be considered by them in determining upon the credibility and sufficiency of the testimony upon which he seeks to recover. *Union Pac. R. Co. v. Botsford*, 141 U. S. 255. If the jury should believe that the refusal showed a purpose to conceal the truth, they might take the fact in account in weighing the evidence. If a satisfactory reason should be given for a refusal, and other evidence were sufficient, the refusal would not defeat a recovery. The suggestion that the court might enforce its order by refusing to submit the case to a jury is not sound, for in this state a party is entitled to a trial by jury whenever he produces evidence which shows *prima facie* a right to recover. In case of unreasonable refusal to allow examination, the court could and should set aside the verdict, unless the evidence satisfactorily established the right. It is claimed by the defendant in error that these matters occurred in the presence of the jury, who were fully informed as to the plaintiff's refusal. That is true, but the action of the court had the effect to take it from the jury, which would neutralize any effect that the occurrence, in the presence of the jury, might have had upon their minds. It was equivalent to telling the jury that it was not to be considered by them. The defendant in error

would get no benefit from the fact that the question was asked and objected to in their presence by the plaintiff's counsel."

The devotion of the Supreme Court of Texas to the rights of the people, as well as being learned in the law, is well recognized.

It appears to me that the exclusion of the evidence complained of, especially when there was a sharp conflict as to whether or not the injury had been sustained, as contended, was prejudicial to the rights of the defendant and a substantial violation of a constitutional or statutory right guaranteeing a fair trial before a jury.

As to the other questions passed on by the Chief Justice, I incline to the view that the same should not now be decided, as upon another trial the evidence may be more specific and complete as to the injury alleged to have been sustained as to the kidneys and also as to the alleged paralysis being the proximate cause of the injury.

With these observations I concur in the judgment reversing the case.