## GEORGE R. WILLET v. LYDIA JOHNSON.

(Filed March 3, 1904.)

1. DEMURRER PROPERLY OVERRULED, WHEN. In an action for
damages for an assault and battery, where the plaintiff and one
other witness testified that the assault and battery was com-
mitted, a demurrer to the evidence on the  ground that there was
no cause of action proved was properly overruled, inasmuch as
plaintiff would be entitled to nominal damages even though no
actual injury had been shown.

2. AMENDMENT TO PETITION—No Error in Allowing, When. To
allow an amendment to a petition at the conclusion of plaintiff's
evidence is a matter largely within the discretion of the trial
court. Before it will be held error to allow such an amendment,
it must appear that the court abused its discretion.

3. JURY MAY CONSIDER FINANCIAL CONDITION OF PARTIES,
WHEN. In an action to recover damages for an assault and bat-
tery, it is not error to allow the defendant to be called and exam-
ined by the plaintiff as to his financial condition, as, after actual
injury is shown, the jury, in assessing exemplary damages, may
take into consideration the financial condition of the defendant.

4. COURT WILL NOT CONSIDER ASSIGNMENTS OF ERROR,
WHEN. Where assignments of error are so general as not to point
out the real error complained of, this court will not consider them,
nor will it examine the record with regard thereto.

5. EXPENSE OF MEDICAL SERVICES—Proper to Prove, When.
A married woman, under certain circumstances, may become li-
able for medical services; and, in cases in which she is liable, it is
not error, on the trial of a case for damages for assault and battery,

to allow testimony to be introduced showing the expenses incurred for such services rendered.

6. ASSAULT AND BATTERY—What Plaintiff Must Show. On the trial of a case for damages for injuries sustained as the result of an assault and battery, the plaintiff must    show that the injuries complained of are the result of the wrongful act complained of.

7. EVIDENCE OF INJURY NO EVIDENCE OF CAUSE—Failure of Proof, When. In the trial of an action for damages for an assault and battery, evidence which    shows the plaintiff was suffering from inflammation of the uterus, ovaries and bladder is not sufficient to prove the cause of the injury. And, in such case, where the evidence fails to show that the injuries are the immediate and proximate result of the assault and battery,    Held, that the evidence fails to prove a cause of action.

8. QUESTIONS OF SCIENCE—To be Determined, How. Where the injuries are of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and    must necessarily be determined by the testimony of skilled professional persons, and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*Gurley & Turner, Jackson & Noble* and *H. B. Martin,* for plaintiff in error.

*A. F. Moss,* for defendant in error.

Opinion of the court by

PANCOAST, J.:    This was an action brought by the defendant in error against the plaintiff in error in the district court of Kay county, to recover the sum of five thousand dollars for personal injuries alleged to have been sustained through an assault and battery committed by the plaintiff in error upon the defendant in error, on the 14th day of April, 1902. The injuries alleged to be the result of the assault and battery are: inflammation of the uterus, fallopian tubes,

bladder and its appendages, for which injuries plaintiff alleges:

"That she has suffered great, intense and continuous pain and mental anguish, that her health has been permanently impaired, and that she has been damaged by reason of the different wrongful and malicious acts of the defendant, by reason of the bodily afflictions described, and by reason of the great physical pain and mental anguish, in the sum of five thousand dollars."

The petition alleges, among other things, that the plaintiff, on or about the 2nd day of March, 1902, sustained an accidental miscarriage, and for a period of above five weeks immediately following, she was under the constant care and treatment of the family physician, and received continuous treatment for the effects of the miscarriage.

The petition also states that the plaintiff has expended for medicines and medical treatment the sum of sixty dollars. The prayer of the petition is for five thousand, sixty dollars, without specification as to what said sum or any part of it is for.

At about the close of plaintiff's evidence, she asked leave to amend her petition, "So as to make it read twenty-five hundred dollars punitive damages and twenty-five hundred dollars actual damages," which amendment was allowed over the objections of the defendant, but the amendment was not made.

The case was tried to a jury, and a verdict returned in favor of the plaintiff for the sum of five hundred dollars, upon which verdict, after motion for new trial had been filed and overruled, judgment was rendered for the amount named in

the verdict, and for costs. The defendant below, as plaintiff in error, brings the case here for review.

Numerous assignments of error are contained in the petition in error and are argued in the brief. We deem it unnecessary, however, to discuss all of them, and we therefore notice only those which we deem sufficiently material and controlling in the case; nor will we follow the specifications of error in the order they are argued in the brief.

The record shows that at the time of the alleged assault, the husband of the plaintiff below was working for the defendant as a farm laborer; the husband, with the plaintiff and her daughter, occupying a building belonging to the defendant, on the defendant's farm, the use of which was allowed the husband as part compensation for his labor.

Defendant having become dissatisfied with the plaintiff's husband, sought to end their business relations, and employed another man whom he intended to permit to occupy the house, intending to have the plaintiff and her husband remove therefrom. When he appeared upon the land at the time stated, a controversy arose between the parties, and the defendant, walking toward the house to a point near the steps leading into the door, attempted to go into the house, when the plaintiff placed herself in a position at the door which prevented him from entering, at the same time telling the defendant that he could not go in. The plaintiff testified, and was supported in the statement by her daughter, that when she refused to allow the defendant to enter the house, he caught her by the wrists and jerked her down from the door to the ground, the distance being two steps of about eight inches each. This act constituted the assault and battery named

in the petition, and this is the act which it is claimed caused the injuries sustained.

The defendant denied absolutely making the assault, and claimed that the plaintiff, in order to prevent him from going into the house, caught him by the lapel of his coat, and that he removed her hands from his person without any attempt at violence of any kind whatever. In this he is supported by witnesses in such number that from an examination of the record, it does not seem that the plaintiff furnished a preponderance of the evidence in support of her claim. However, the jury found otherwise, and the court sustained the verdict, so that, following the numerous decisions of this court, we will not disturb the judgment upon this ground.

Following this rule, it must be held that the plaintiff below was entitled to a judgment for at least nominal damages; and, as she was entitled to a judgment for nominal damages, if nothing more, the demurrer to the evidence interposed by the defendant was properly overruled.

Nor was there any error committed by the court in allowing the plaintiff to amend her petition so as to ask for exemplary damages. Courts should be reasonably liberal in allowing amendments of this character under the circumstances shown in this case, for if the jury found that the assault and battery was actually committed as testified to by the plaintiff and her daughter, and the plaintiff was entitled to anything as compensatory damages, then the jury might very properly assess exemplary damages as well.

Nor was there any error committed in allowing the defendant to be examined by the plaintiff to show his financial

condition, this class of evidence being competent, as, after actual injury was shown, the jury, in assessing exemplary damages, may very properly take into consideration the financial condition of the defendant. (*Courvoisier v. Raymond,* [Col.] 47 Pac. 284; Sutherland on Damages, vol. 1, p. 745.)

This disposes of specifications of error contained in the brief, numbered two, four and five. Specifications one, six, seven and eight are too general in their character, and do not point out to the court the real error complained of. For instance, specification number one says that the court erred in admitting incompetent and prejudicial testimony, but what particular testimony was admitted is not specified.

It is claimed that the court committed error in permitting the defendant in error to introduce testimony of expenses incurred for medical services rendered. We cannot agree with counsel that the plaintiff could in no event be liable for medical services, for the reason that she is a married woman, and it is the duty of the husband to procure medical services for his wife. While the husband may be liable, yet under our statutes relating to married women, we think, under some circumstances at least, the plaintiff would be liable as well as her husband for the medical services rendered her. It does not follow that because the husband is always liable for such services, that the wife may not also be liable.

The most serious proposition in this case grows out of the evidence, or rather, the want of evidence bearing upon the question of whether or not the affliction from which the plaintiff was suffering and had suffered in the past, was caused by the assault on the part of the defendant. The testimony introduced in support of the plaintiff's case was that

of the plaintiff herself, her daughter Blanche, and Dr. T. R. Stegall. The record conclusively shows that the plaintiff and her daughter do not possess any extraordinary intelligence, and none of a professional character, such as would give them information of these matters under consideration, but, on the contrary, are persons of very limited education. The only witness offered having any medical skill or scientific knowledge of injuries of this character was Dr. Stegall.

We may consider the fact that the plaintiff was suffering from inflammation of the uterus, ovaries and the bladder and its appendages, as being sufficiently proved; in fact, there was no conflict in the evidence upon this point, the only trouble being that the evidence fails to show the injuries to be the result of the assault, and falls short of being satisfactory as to their extent.

The mere fact that the plaintiff was afflicted in the manner shown, and was suffering therefrom, does not prove the cause of the injuries, and here is where the trouble arises in this case, and where the evidence of the plaintiff fails to support the allegations of the petition.

It follows necessarily, from the fact that neither the plaintiff nor her daughter had any special skill or knowledge with reference to the diseases with which plaintiff was afflicted, that the testimony which was given by them upon this subject would be of no value, and of no aid to the jury in determining what caused the injuries from which the plaintiff was suffering, or their extent.

To maintain her action, in this particular, under the circumstances of this case as disclosed by the record, the plaintiff should have offered evidence of skilled witnesses to

show that her condition was the result of the assault; indeed, the court so instructed the jury, when it said that before the jury could find a verdict in favor of the plaintiff they must find the injuries complained of were the direct, immediate and proximate result of the assault and battery. While the learned judge well understood the rule governing this branch, yet he failed to make proper application of it when he allowed the jury to consider this question, inasmuch as there was an entire want of evidence upon this point. It is impossible for persons unskilled in the profession of medicine or surgery to determine the cause of such diseases as the plaintiff in this case was suffering from; and these questions being questions of science, must necessarily be determined by the testimony of skilled and professional men; and they can determine the fact sufficiently for them to form an opinion, only by a careful examination and information derived from the patient.

Dr. Stegall was the only witness called for the plaintiff who testified upon this subject, who by reason of his scientific knowledge was capable of giving the court and jury the necessary information.

He testified that about the first of March he was called to treat the plaintiff, and that about the day before, he was called, the plaintiff had had a miscarriage; that he made about three visits, but that he continued treating her for some time, and was again called to see her about the first of April. At that time, the doctor states, the plaintiff was suffering in the region of the ovaries, and especially upon one side; that she complained of having a chill. The doctor states that there are a number of things that might cause the condition of the

patient at that time.   The first and more usual would be exposure to cold; the second, some menstrual disturbance; the third, an injury of some kind, a strain; and that it might have been the result of the former miscarriage.   He testifies that in eight or nine days following that treatment, he saw her again when she came to town, and that he has since been treating her off and on, more at some times than others. When asked the direct question as to what had caused the plaintiff's trouble, this witness answered "I do not know."

This witness, having heard the testimony of the plaintiff and her daughter as to the assault alleged to have been made, was asked by the court whether or not this assault testified to by the plaintiff would produce the injury from which the plaintiff was suffering.   The doctor stated that she evidently was not entirely well if it would cause it.   Again he says: "I think if that would have caused it, she would not have been a healthy woman."

Again, this witness was asked if he knew the plaintiff's condition at the time of the assault, and he answered that he did not; that she came back and got a bottle of medicine, and he thinks he gave her a second bottle, but he did not hear from her for some time.   Again, the court asked this witness:

"Q.   Did you make an examination as to what caused the miscarriage?

"A.   I could not tell.

"Q.   Did you make an examination?

"A.   No sir; I examined her, but not to ascertain what caused it."

This is the principal part. if not all the testimony of this witness bearing upon this particular branch of the case. He was examined at some length concerning the nature of the injuries complained of, the origin of such injuries and the difference and extent of the same as shown in different persons, but in no particular did he testify to the extent of these particular injuries as to whether they were permanent, or how serious they were, or whether, if curable, how long and what character of treatment would be required to cure them.

Again, he states further on in the examination, that the most prevalent cause of these troubles is cold, and that he thinks that exposure to cold at certain times would have caused the affliction from which the plaintiff was suffering, even if she had been enjoying entirely good health.

We are not now considering the question of the weight of the evidence in this particular, but only the fact that the evidence fails to show what was the cause of the injury from which the plaintiff was suffering.

It was absolutely essential that the plaintiff should show what caused the injury. It was not sufficient to show simply that there was an injury, for it does not follow that because the plaintiff was suffering from some injury, that such injury was caused by the assault on the part of the defendant.

Notwithstanding this failure of proof on the part of the plaintiff, the defendant introduced several expert witnesses, physicians, one of whom in particular shows a very wide and thorough knowledge of the injuries and afflictions such as testified to by the plaintiff in this case, and their causes. These witnesses all agreed that improper care of the person, exposure, violent exercise and hard labor, such as

the plaintiff testified she was accustomed to, might very readily and probably would create the disturbance or disease from which the plaintiff testified she was suffering. Indeed, the testimony on the part of the defendant would seem to be far in excess of that offered by the plaintiff, upon the proposition of what caused the injuries, so that it is readily seen that the necessity of expert testimony in cases like this is especially applicable here. ( *Pettigrew v. Lewis,* 46 Kan. 78, 26 Pac. 458; and cases there cited; *Tefft v. Wilcox,* 6 Kan. 46.)

At any rate, whatever may be the cause of the plaintiff's afflictions, we cannot say from the evidence in this record that they are the result of the act of the defendant below, nor can we say, nor could the jury determine from the evidence introduced, what was the extent of the injuries.

Having reached this conclusion, it follows that the judgment of the court below must be reversed.

Several assignments of error are based upon the instructions. Having reached a conclusion in this case which requires the case to be retried, it may be well to notice one particular branch of the instructions which we think, while not necessarily error, should be more specific in case of a new trial.

The plaintiff sought to recover both actual and exemplary damages. Pecuniary compensation for injuries caused by an assault and battery is the measure of actual damages, while exemplary damages are dependent upon other facts, and are measured by an entirely different rule. The verdict in this case does not show how much is allowed for actual damages, and how much for exemplary damages. While the

court's instruction upon this point is sufficient so far as it goes, yet we think it is not sufficiently specific as a guide for the jury, as the very nature of this case and the injuries sustained, when proved, would be well calculated to lead a jury uninformed sufficiently as to the law, to a consideration of those things which the law does not permit.

An instruction that the injuries must be the direct, proximate and immediate result of the assault is, we think, hardly sufficient. While the jury might find that the assault was the direct, proximate and immediate cause of the injury, yet the instruction does not sufficiently, we think, direct the minds of the jury to those particular subjects to be considered by them.

The rule giving the elementary limitation fixes the logical boundary of redress, but it does not disclose what are the elements of injury for which compensation may be given, except two, nor does the instruction direct the jury to the fact that they are limited to an amount commensurate with the nature and extent of the injury. These are legal inquiries, and must be determined by the court. We think that in every damage suit, the court ought to furnish the jury a rule by which to measure and fix the damages, and this rule ought to cover the different elements for which compensation may be awarded.

The judgment of the court below is reversed, and the cause remanded for a new trial.

Hainer, J., who presided in the court below, not sitting; Burford, C. J., absent; all the other Justices concurring.