## ST. LOUIS & S. F. R. CO. v. CRINER.

No. 3000.    Opinion Filed December 23, 1913.

(137 Pac. 705.)

1.    CARRIERS—Injuries to Passengers—Proximate Cause.   Though it may be made to appear that a railroad company is guilty of negligence in the carriage of a passenger, yet, before a recovery can be had for injuries subsequently sustained, and charged to have been the result of such acts of negligence, it must be shown by competent evidence that the acts of negligence were the proximate cause of the injury.

2.    SAME—Negligence—Evidence.   Where a female passenger suffers a miscarriage some two or three days after arrival at her journey's end, and where, during the course of the journey, the carrier may have been guilty of negligence, but where there was no competent evidence that the subsequent miscarriage was caused by or resulted from the negligent acts of the railroad, a verdict based partly on proof of miscarriage and attendant suffering cannot be sustained.

3. **EVIDENCE—Opinion Evidence—Necessity.** Where the injuries are of such character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and must necessarily be determined by the testimony of skilled professional persons.

4. **APPEAL AND ERROR—Erroneous Instructions—Cure by Remittitur.** Instructions submitting to the jury an element of damage of which there was no competent proof, duly excepted to, where the verdict is general, with nothing to indicate how the damages were apportioned, cannot be cured by remittitur.

5. **TRIAL — Instructions — Application to Evidence.** Evidence examined and **held** insufficient to submit to the jury, as an element of damage, plaintiff's miscarriage.

(Syllabus by Sharp, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by Etta Criner against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*H. C. Potterf* and *E. A. Walker,* for defendant in error.

Opinion by SHARP, C. Plaintiff's action was brought to recover damages for injuries inflicted upon her, as well as those resulting from various negligent acts of the defendant, while a passenger on its railroad from Ardmore to Francis by way of Madill. It was charged that the negligence, carelessness, and cruelty of the defendant caused plaintiff great physical pain, which resulted in a miscarriage, whereby her health had been greatly injured in the sum of $1,900, and that she had been further damaged in the sum of $99.50, expended for nurse hire, physician's charges, and extra car fare. The trial resulted in a verdict for plaintiff for $500.

Plaintiff's testimony tends to show that on the 4th day of March, 1909, she boarded a passenger train at Ardmore to visit sick relatives at Francis, a station on the line of defendant railway north of Ada. That, some miles out of Ardmore, it was discovered a railroad bridge was on fire, and the passengers

aboard the train were ordered by the conductor to disembark, and walk across the ravine spanned by the burned bridge to where a train was standing on the opposite side ready to carry them on to the main line junction at Madill. That there was a high embankment where the passenger train was stopped on reaching the burned bridge, which embankment was some three or three and one-half feet from the lower step of the car. That, at the time, plaintiff was accompanied by her fourteen year old son and a child nineteen months old. That in alighting from the car the train crew afforded her no aid or assistance, though a fellow passenger came to her relief immediately thereafter. That she started to cross the railroad bridge, which was about 25 feet long and fifteen or twenty feet high, and while doing so became dizzy, and was aided across by a fellow passenger. She was then told by some of the train crew to get aboard the train standing on the opposite side of the bridge, which she did, also without aid, though this train was standing on a high embankment, and the lower car step was about the same distance from the ground as was the step of the car from which she had just disembarked. That, on account of the negligent acts of the defendant in the particulars mentioned, she became sick and had a severe headache, though after getting on the train she was very comfortable until she reached Ada. Between Ada and Holdenville it appears that other bridges had been burnt out, and the train on which she was a passenger from Madill was detoured from Ada to Shawnee over the Missouri, K. & T. Railway, and from Shawnee to Holdenville over the Chicago, R. I. & P. Railway. In changing cars at Ada for transportation on another train to Francis, she boarded the wrong train and was carried back south, and caused to spend the night at Roff, where she testified she had good accommodations, and, in answer to the question how she got along while there, stated: "Fine." On the morning following she boarded the regular north-bound passenger train. When this train reached Ada she was transferred to an emergency train running between Ada and Sasakwa through Francis. She reached her destination about four o'clock in the afternoon of the day following the commencement of her journey. At the

time she arrived at Francis, her testimony shows she was feeling very badly, and, though she claims she was not able to sit up, her own testimony shows she walked a distance of four blocks to the home of her parents, where she stayed all night; that on the day following she walked from her father's residence to her sister's, a distance of three blocks, where she stayed until the day following, when she walked two blocks to the home of an uncle, where she remained five or six days; that about twelve hours after reaching her uncle's house, she miscarried, giving birth to a three months old fetus.   In the meantime her husband had arrived in Ada and ordered a physician, who arrived about five minutes after the miscarriage.   No examination of plaintiff was made by this physician, though he examined the fetus in another room, and afterwards told plaintiff it was unnecessary to make any examination of her as she was all right.   Thereafter plaintiff was confined to her bed for five or six days, when she departed for her home near Ardmore.   She testified that at · the time of trial she was 41 years old, and had had two previous miscarriages, and was at the time of trial the mother of nine children, one a baby two months old.   Dr. J. C. McNeese, her family physician, testified to having called to see Mrs. Criner on March 14th, and found her suffering a great deal from what he believed to be an abortion; that, on the day following, he returned and performed an operation on her, and gave her treatment.   He further testified that he could not tell from her condition what was the cause of the abortion.   Bud Holder testified as a witness for plaintiff, and his evidence is in the main corroborative of plaintiff's as to what occurred at the burnt bridge, though he stated that on mounting the car at the bridge the conductor placed a small platform on the ground underneath the steps, and, aided by the witness, assisted the plaintiff on the car.

We think the court was correct in overruling defendant's demurrer to plaintiff's evidence, as well as in refusing to direct a verdict for the defendant, as there was evidence tending to show negligence on the part of the defendant, and consequent illness and suffering by plaintiff, though perhaps not of a serious nature, apart from the main element of damage relied upon,

consisting of the subsequent miscarriage and suffering occasioned thereby.

The really serious question presented is: Was the miscarriage and attendant suffering and illness the result of defendant's negligence? For not only must the negligence of the defendant be proved, but it must be shown that such negligence was the cause of the injury. That plaintiff, while at her uncle's house in Francis, had a miscarriage from which she suffered serious illness was established by the undisputed evidence. There was, however, no competent evidence that her miscarriage · and attendant illness were the result of the proven acts of negligence. The physician summoned to wait on her at the time was not present as a witness, or if present, did not testify. Dr. McNeese testified that he could not tell from her condition the cause of the abortion. No hypothetical questions were put to this witness, and no effort was made to prove the cause of the miscarriage, unless it be from such inferences as might arise on account of the nearness in point of time of the injury and the negligence.

The court, in its charge to the jury, gave the following instruction, which was objected to by the defendant:

"There were two events occurring on the trip, to wit, the occurrence at the burned bridge where she had to alight from the train she started on and walked across the bridge to a transfer train, and also having to ride in a box car or caboose from Ada to Francis, as testified to by plaintiff, and from which you are expected to determine, when being considered separately, or together, were of sufficient cause to produce the premature birth of her child and consequent injuries and suffering, and so forth. And, on this matter you are instructed that it was plaintiff's duty to exercise such care as an ordinarily prudent person would have when alighting from the coach at the bridge, and, while you are the judges of the weight and value of the evidence, I submit to you if in alighting from the coach in her delicate condition was she prudent in carrying at the time a nineteen months old child in her arms, and if not so, and you should believe her injuries were produced as a result thereof, then she cannot recover for such cause, or causes, if any."

Herein we think the court erred, for, without any competent evidence as to the cause of plaintiff's miscarriage, the court submitted to the jury whether or not the occurrence at the burnt bridge, and the fact that plaintiff had to ride in a box car or caboose from Ada to Francis, considered separately or together, furnished sufficient cause to produce premature childbirth and consequent suffering. Before this issue could have been properly submitted, there should have been competent proof introduced, connecting the injury with the negligence.

In *Milwaukee & St. Paul Ry. Co. v. Kellogg*, 94 U. S. 469, 24 L. Ed. 256, which case is spoken of by White in his work on Personal Injuries, sec. 23, as a classic in the law of probable and remote cause, Justice Strong announced the rule as follows:

"It is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

The question presented was first before this court in *Willet v. Johnson*, 13 Okla. 563, 76 Pac. 174, where it was held that the plaintiff, upon whom an assault and battery was alleged to have been committed, which resulted in inflammation of the uterus, Fallopian tubes, bladder and its appendages, should have offered evidence of skilled witnesses to show that her condition was the result of the assault; that it was impossible for persons unskilled in the practice of medicine or surgery to determine the cause of such disease as the plaintiff in that case was suffering from; that those questions, being subjects of science, must necessarily be determined by the testimony of skilled and professional men. The rule thus announced was followed by this court in the recent case of *Atchison, T. & S. F. Ry. Co. v. Melson,* 40 Okla. 1, 134 Pac. 388. In the latter case it was shown that the injuries for which a recovery in damages was sought, consisted of a bruised leg and hip, injury to the back and kidneys, in and about the lumbar region of the spine, resulting about one month afterwards (it was claimed) in a stroke of paralysis to the left leg, side, and arm. As to the cause of the paralysis, as it was observed by

the court, the record was silent, except the mere circumstance that it occurred about a month after plaintiff received her fall. It was said:

"The evidence, to justify a court in submitting to the jury the question of whether or not a certain bodily condition complained of is the result of the injury, should show the connection between the two with reasonable certainty, and not leave it to vague speculation and conjecture. * * * Sufficiency of the evidence to prove that a disease from which the injured party is suffering * * * was caused by the injury depends, of course, upon the distinguishing facts of each individual case; the mere fact that a certain diseased condition might consistently arise from the injury is insufficient. The evidence should so exclude other causes, and the circumstances be such, that a reasonable inference arises that the injury caused the disease."

In the course of the opinion, it was further said:

"No one testified that the injury plaintiff received was at such a place and was of such a character as would likely result in paralysis, and there is absence of evidence from any one that such injury was the cause of the paralysis. There is competent evidence that by the fall plaintiff was bruised upon her leg, upon her hip, and across the back, and that from these bruises she suffered pain. These facts constituted proper elements of damage to be considered by the jury; but the alleged elements of damage, consisting of disease of the kidneys and paralysis, are not supported by any evidence tending to show that such diseases resulted from the injuries received by plaintiff's fall, and they should have been taken from the consideration of the jury by the instruction requested."

There proof of the accident, immediate injuries sustained, and the subsequent stroke of paralysis were shown, but it was held by the court there was an entire absence of any evidence to show that the stroke of paralysis was the result of the injuries received by plaintiff in the accident. Nor can we say, nor could the jury, that the miscarriage, sustained by the plaintiff some two or three days after her arrival at Francis, was caused by defendant's negligence. The mere fact that defendant was ill when she reached Francis, even though caused by defendant's negligence, was not proof of what caused her subsequent miscarriage. It will be remembered that the plaintiff had had two previous miscarriages, on one occasion, thirteen years before, giv-

ing birth to a four months old fetus, and on another occasion, six years before, giving birth to a three months old fetus. Many reasons may have existed, wholly independent of the defendant's act, that would have caused premature childbirth, and the burden rested upon the plaintiff to show that the alleged acts of negligence effected that result. *St. Louis & S. F. R. Co. v. Davis,* 37 Okla. 340, 132 Pac. 337. The rule is well established that in an action for personal injuries, although the defendant may be shown to have been negligent in some manner, yet, unless the negligence so shown was the proximate cause of the injury complained of, no recovery can be had on account of such negligence. *Mayne v. Chicago, R. I. & P. Ry. Co.,* 12 Okla. 10, 69 Pac. 933; *St. Louis & San Francisco Railroad Co. v. Hess,* 34 Okla. 615, 126 Pac. 760; *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 475, 24 L. Ed. 256.

To what extent the damages were enhanced by the fact of the plaintiff's miscarriage, we are unable to say. The verdict being general, with nothing to indicate how much of the damages were apportioned to plaintiff's misfortune on account of her miscarriage and attendant illness, as distinguished from the sickness suffered by her while a passenger, or thereafter sufficiently proven to have resulted from defendant's negligence, a *remittitur* cannot be directed, but, instead, the cause must be reversed. *St. Louis, I. M. & S. Ry. Co. v. Hall,* 53 Ark. 7, 13 S. W. 138; *Chicago & E. I. R. Co. v. Donworth,* 203 Ill. 192, 197, 67 N. E. 797; *Bates Machinery Co. v. Crowley,* 115 Ill. App. 540; *Whitman v. Atchison, T. & S. F. Ry. Co.,* 85 Kan. 150, 116 Pac. 234, 34 L. R. A. (N. S.) 1029, Ann. Cas. 1912D, 722; *Stout v. McMasters,* 37 Minn. 185, 3 N. W. 558; *Gulf, C. & S. F. Ry. Co. v. Rossing* (Tex. Civ. App.) 26 S. W. 243; *Scanlan et al. v. Davis* (Tex. Civ. App.) 124 S. W. 126; 3 Cyc. 439.

In view of another trial in this case, we wish to call attention to an instruction given by the trial court defining negligence, and which concluded thus wise:

"But to warrant a recovery by the person injured such person must not have contributed to the negligence or causes producing such injuries, and, in this case, among the other questions for you to determine is whether or not the plaintiff was

guilty of contributory negligence, that is, whether her acts and conduct were such as aided in bringing about that which she complains of, and seeks damages therefor."

In at least two other places in the instructions, the court referred to the question of contributory negligence. The issue of contributory negligence was nowhere injected into the case, save in the court's instructions. The defendant's answer consisted of a general denial, and no claim was made that the plaintiff was guilty of any act of contributory negligence. The instruction was highly prejudicial to the plaintiff, and, while being favorable to defendant, and it may have no right of complaint (a question upon which we express no opinion), at the same time the instruction or allusion to the fact of contributory negligence should not have been permitted.

The judgment of the trial court should be, reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.