## LETCHER v. SKIVER.

No. 13800—Opinion Filed March 4, 1924.

Rehearing Denied June 10, 1924.

1. Appeal and Error — Harmless Error — Admission of Evidence Later Stricken.

Where, in response to a proper question, a portion of the witness' answer is incompetent and irrelevant, and such incompetent

and irrelevant testimony is stricken by the court and the jury instructed to disregard the same, and it is not apparent from an examination of the whole record that the complaining party was prejudiced by such answer, no reversible error has been committed by the court's refusal to dismiss the jury and declare a mistrial.

**2. Evidence — Expert Testimony — Visible Personal Injuries and Cause.**

Where a person is struck by an automobile and forcibly knocked to the pavement and is found to have sustained lacerations, contusions, and abrasions visible to the unprofessional, as well as the professional person, held, such are not of such character as to require skilled and professional persons to determine the cause thereof, and the question of the injuries and the cause thereof is not one of science, and need not necessarily be proven by the testimony of skilled and professional persons.

**3. Appeal and Error—Review — Conflicting Evidence.**

Where a cause has been fairly submitted to the jury under proper instructions, this court will not examine conflicting testimony to determine the weight and sufficiency thereof.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Mrs. S. E. Skiver against J. C. Letcher. Judgment for plaintiff, and defendant appeals. Affirmed.

Underwood & Rodolf and Biddison & Campbell, for plaintiff in error.

Carter Smith, for defendant in error.

Opinion by RUTH, C. This was an action originally filed in the district court of Tulsa county, Okla., by the defendant in error, plaintiff below, wherein she sought to recover damages for injuries alleged to have been suffered and sustained by reason of being struck by the automobile of the plaintiff in error, defendant below, and, for convenience, the parties will be designated as they appeared in the trial court.

Plaintiff's petition, briefly stated, alleges that while she was crossing a certain public street in Tulsa, at the regular crossing for pedestrians, which street was paved with cement, concrete, and asphalt, and when about four feet from the curb, and in the roadway, the defendant propelled his automobile along said street at an unlawful rate of speed, and failed to give the signals required by the city ordinances, and said auto struck the plaintiff, knocking her down and thereby "the muscles, nerves, ligaments, and tendons of her back, hip, legs, knees, were torn, bruised, and lacerated, and she suffered permanent and incurable injuries." The petition also sets forth the ordinances of the city of Tulsa regulating traffic, such as sounding signals when approaching street crossing, and rounding corners, the rate of speed of automobiles at such points, etc., and prays damages in the sum of $10,125.

Defendant answered by way of general denial and contributory negligence. The cause was tried to a jury and a verdict for the plaintiff was returned, fixing the damages at $325. After a motion for a new trial was filed and overruled, this cause was brought here for review.

Defendant sets forth five assignments of error and presents thereunder two propositions, which will be considered in their order.

(1) "When a plaintiff, in a damage suit for personal injuries, injects into the evidence before a jury, either personally or through counsel, a suggestion that the defendant is protected by liability or indemnity insurance, and that in reality an insurance company is the real party defendant, such action constituted reversible error in the event a judgment is rendered for plaintiff, and a motion by defendant to discharge and withdraw the jury at such time should be sustained."

The testimony objected to was given by the plaintiff in relating the conversation she had with the defendant when he visited plaintiff at the hospital on the day following the accident, and consisted of the following questions and answers:

"Q. Did Mr. Letcher come to see you the next day at the hospital? A. Yes, sir, Sunday afternoon; yes, sir, he did. He and his wife both. Q. Did you have a conversation there with him with reference to him running into you, with you all? A. No, sir. Well, he talked about it; I didn't feel very much like talking but he talked about it. Q. What did he say? A. He said he was willing to do what he could for us to help us. You know our case there and thats—said he was—that he had big insurance on his car and that they would do right by me."

The defendant interposed timely objection to the testimony and moved the court to withdraw it from the record and dismiss the jury and declare this, "No trial." The court struck answer and instructed the jury not to consider any portion of the conversation with reference to insurance as the same was incompetent, but refused to dismiss the jury, and the defendant noted his exception. Thereafter the plaintiff testified as follows:

"Q. Don't—tell what he said with reference to the accident. A. Well, he said he thought—he said he went to turn the corner. He said there was so—a car across the street blowing their horn so much that he didn't believe it was necessary for him to blow his horn. I know I said to him, 'I didn't hear any horn,' and he said he didn't blow his horn because the car across the street was making so much noise. He says making noise enough for all of them. Q. Is that all he said?

"A. Well, I just don't remember now. He said that by the way his car registered he was running about fifteen miles an hour. Q. Did he say anything about seeing you? A. No, he said he didn't see us. He didn't know he had hit anything until he felt the jar on his car."

Defendant has favored us with a very exhaustive brief in support of proposition No. 1, and we have examined carefully the cases and agree with the findings therein in the main as applied to the facts in those cases, in most of which it appears counsel for plaintiff deliberately, designedly, and persistently propounded questions with the fixed design of eliciting from the witnesses the fact that the defendant carried indemnity insurance and mentioned this fact in argument, and in many instances counsel was not admonished by the court to refrain from mentioning the fact that the defendant carried indemnity insurance, in some instances the court failed to strike the evidence or instruct the jury not to consider the same. All cases cited by defendant appear to have turned upon the fact that in the opinion of the court the mention of the insurance being carried by defendants was designedly injected into the case for the purpose of prejudicing the jury, and the prejudice was manifest in the excessive amounts returned in their verdicts.

The authorities were not entirely harmonious on the question and counsel should exercise extreme caution in approaching the subject when examining witnesses, and admonish witnesses beforehand to refrain from any mention of the fact of the defendant carrying insurance, as in many instances a violation of the rule will cause a reversal of judgment. We wish to say, however, a careful examination of this voluminous record fails to disclose any attempt on part of counsel for plaintiff to inject any testimony touching the insurance feature, and throughout the trial and argument he employed no tactics calling for an admonition or rebuke from the court. The trial court, in passing upon the motion for a new trial, stated:

"If I thought the question of insurance, being accidentally brought into the case as it was, and it seems to run through most of these authorities there that one way or another it was designedly done by counsel, which, of course, was reprehensible, in this case I do not think that it was designedly done, either on the part of counsel or on the part of witness herself. I think she was an ignorant woman; she didn't have any idea, I don't think, of trying to inject that feature in this case for the sole purpose of getting it before the jury. * * * I think there is sufficient evidence to support the verdict of the jury in this case, and where the court feels that way I don't believe there is sufficient ground to grant a new trial."

If the injection of the fact of the defendant's carrying insurance had been designedly done or persisted in, the opinions cited by defendant might be followed with safety; if the verdict was excessive and in such amount as to be out of all proportion to the injury suffered, the presumption of prejudice might be entertained, but no such condition confronts us in the case under review. It would be but natural for one not learned in the niceties and subtleties of law, when asked to relate "the conversation had with defendant in reference to the accident," to relate the whole conversation as she remembered it, and her attitude during the trial discloses no attempt on her part to inject incompetent evidence into the record, and in view of the injuries proven to have been sustained (it being disclosed by the testimony of the attending physician that some months after the accident an incision was made in the injured hip and a pint of "black blood and broken down tissue" drained therefrom and thereafter a second incision was necessary) and the amount returned in the verdict, it is not apparent to the court that the jury was prejudiced by the slight reference to the conversation with the defendant, wherein insurance was mentioned.

We are not prepared to go as far as the learned judge in Howard v. Marshall Motor Company (Kan.) 190 Pac. 11, where he said:

"I am unable to see why the courts, in respect to a defendant's indemnity, should ever feel called upon to 'walk softly like the gods whose feet are shod with wool,' or why an inpenetrable obscuration should involve so simple and common situation. Why should not the jury know who the real party is, the same as they may know who is putting up the security for costs, or who is paying the expenses of a witness? To invest the fact of defendant's insurance with the sanctimonious camouflage of a manufactured reverence is, to my mind, the superlative quintessence of judicial ineptitude."

But there has been a relaxation of the rule formerly strictly adhered to, that jurors, even on their voir dire examination might not be asked if they are stockholders in or the agents of any casualty or indemnity company. Enger v. Curtis Towle & Paine Co. (Neb.) 146 N. W. 1032; Myer v. Gundulack-Nelson Mfg. Co., 67 Mo. App. 389; Girard v. Grosvenordale Co., 87 Conn. 271, 73 Atl. 747; Boten v. Sheffield Ice Co., (Mo.) 166 S. W. 883; Owenboro Wagon Co. v. Boling, 32 Ky. L. Rep. 816, 107 S. W. 264; Swift & Co. v. Platte (Kan.) 74 Pac. 635; Howard v. Marshall Motor Co. (Kan.) 190 Pac. 11; Williamson v. Hardy (Cal.) 190 Pac. 646.

In a very recent case—Aderhold et al. v. Bishop, 94 Okla. 203, 221 Pac. 753, this court passed upon a somewhat similar case, in fact, where the violation of the rule was more flagrant than in the instant case. In that case, counsel asked a question designed to elicit information as to whether or not the El Reno Sanitarium was indemnified against liability for personal injuries and again propounded a question designed to elicit information as to whether the defendant was personally indemnified for injury inflicted by the El Reno Sanitarium, and upon proper admonition by the court, and proper instructions given to the jury, this court held:

"So far as the trial court is concerned, it appears that it was extremely careful to see that no prejudicial inference arising from the questions asked and objected to and sustained, should go to the jury and we are, therefore, unable to agree with counsel that the trial court was guilty of any prejudicial conduct against the defendants, * * * and we see nothing in the mere fact that counsel for plaintiff asked an incompetent question, calling for a public reprimand, or that the mere asking of such question would amount to misconduct on his part." Citing Hollenbeck v. Mo. Pac. Ry. Co. (Mo.) 38 S. W. 723. See, also, Bradley v. D. E. Cleary Co. (N. J.) 90 Atl. 1015; Muehlebach v. Muehlebach Brewing Company (Mo.) 242 S. W. 174.

In view of the evidence, admonitions, instructions, verdict, and judgment, we find no prejudicial error in the refusal of the court to dismiss the jury on the ground set forth in the defendant's first assignment of error.

The second and last proposition of the defendant is as follows:

"Inasmuch as the plaintiff's alleged injuries can only have been proven by the testimony of skilled and professional men, and there was offered no such testimony, the plaintiff was not entitled to recover anything from the defendant."

Under this proposition, defendant contends the court erred in not instructing the jury to return a verdict for the defendant, and that the court erred in giving to the jury instructions No. 4 and No. 5. It is unnecessary to state the instructions taken in full, as they, in substance, advise the jury that if they found from the evidence the plaintiff suffered injuries by being struck by the defendant's automobile, and the injuries were occasioned by the defendant's negligence, and such negligence was the proximate cause of the injuries, they might find for the plaintiff in such sum as would reasonably compensate her for her injuries, if any, which she sustained, and in this connection the jury might take into consideration the amount, if any, which the plaintiff has become liable and bound to pay for doctor bills, nurse hire, medicines, which is shown by the evidence to be reasonable in amount, and necessarily incurred, and whether or not the injuries, if any, are of a permanent character. The instructions substantially state the law under the evidence, and no error was committed by the court in giving the same to the jury.

The defendant contends, "that the cause of the injuries complained of by the plaintiff and testified to by her physician can only be proven by the testimony of skilled professional persons," and directs our attention to two cases, Ft. Smith & Western Ry. Co. v. Hutchinson, 71 Okla. 139, 175 Pac. 922, and Willet v. Johnson, 13 Okla. 563, 76 Pac. 174, wherein this court held:

"Where injury complained of is of such a character as to require skilled professional men to determine the cause and extent thereof, the question is one of science and must necessarily be proven by the testimony of skilled and professional persons."

With this rule we are in perfect accord, but the rule is not applicable to the facts in this case. Had the plaintiff alleged internal injuries, such as "inflammation of the uterus, ovaries, and bladder," as in Willet v. Jackson, supra, the necessity for the application of the rule would be obvious, but where we see a woman struck by an automobile, knocked to the pavement, and we pick her up and find her bleeding and find contusions, abrasions, and lacerations on her hips, thighs, legs, and knees, it does not require the trained eye of "professional persons" to determine she has been injured, and when, upon being taken to the hospital, the physician finds these contusions, abrasions, and lacerations, and she testifies that before the defendant's automobile struck her and she struck the pavement these lacerations, abrasions, and contusions were not on her body and limbs, we cannot say an

Intelligent jury is not justified in finding the woman suffered some injury, and that the automobile and pavement had something to do with their infliction. The physician testified that some months after the date of the injury he had occasion to make an incision in the hip of the plaintiff (being the hip she testified was injured in the accident and the incision made at the point of the injury), and extracted therefrom a pint of blood and broken down tissue. We feel the requirements of the rule laid down in Ft. S. & W. Ry. Co. v. Hutchinson, supra, and Willet v. Johnson, supra, have been substantially met and complied with.

While the evidence in this case is conflicting, this court will not reverse the judgment on appeal where there is sufficient competent evidence upon which a jury could reasonably predicate their verdict, and the instructions given by the court are free from error. Berquist v. Thomas, 86 Okla. 214, 207 Pac. 964; Kuhl v. Supreme Lodge Select Knights & Ladies, 18 Okla. 383, 89 Pac. 1126; Willoughby v. Kelly, 19 Okla. 123, 19 Pac. 874. The principle herein announced is so well settled by a long line of decisions that further citations are unnecessary.

Finding no error in the record, the judgment of the court below should be sustained.

By the Court: It is so ordered.