## INTER-OCEAN OIL CO. et al. v. MARSHALL.

No. 21169.   Oct. 31, 1933.

Poe, Lundy & Morgan and H. R. Duncan, for plaintiffs in error.

E. M. Connor, for defendant in error.

BAYLESS, J.   Inter-Ocean Oil Company,

a corporation, and W. J. Collier, defendants in the trial court, bring this appeal from a judgment of the district court of Tulsa county, Okla., in favor of May Marshall, plaintiff. The parties will be referred to herein as they appeared in the trial court.

The plaintiff's petition alleged, in substance: That Harry Marshall was her husband, and their family consisted of the husband, the wife, and two sons. That the husband was employed by the defendant oil company, through its superintendent, Collier, also its codefendant, under a verbal contract, and the terms of such contract of employment were that Marshall was to have employment for at least one year, upon which condition Marshall was to erect, at his own expense, a dwelling house upon the oil company's lease and live there with his family, for which dwelling house the oil company was to furnish gas, for fuel and light, and water, free. That Marshall erected a dwelling house, and was furnished gas and water, but before the year was out he was discharged by the oil company. That sometime thereafter, the oil company, through its agent, Collier, threatened to disconnect the gas service and thereby deprive Marshall and his family of the use of the gas for fuel and lights. That at that time the plaintiff told the defendants that Marshall was ill, that their two sons were ill, and that she was pregnant, and they would all suffer from the rigors of the weather if they were deprived of the use of the gas; whereupon, the defendants desisted from their announced intention. That in the month of January, 1929, plaintiff and her husband took their children to Tulsa to stay, and upon their return home found that the defendants had disconnected the gas line and shut off their supply of gas. That plaintiff was forced to stay in the house that night, in freezing weather, and to remove from the house the next day, during all of which time she was exposed to the bitter weather. That as a result of this exposure the plaintiff suffered a nervous shock, contracted a cold, became ill therefrom, and suffered a miscarriage. Plaintiff outlined the resulting injuries and asked for damages.

The defendants filed a joint answer admitting certain parts, and denying certain parts of the contract of employment, denying malice or negligence, pleading contributory negligence, alleging the giving of notice that the gas would be shut off, and negligence of the plaintiff thereafter.

The jury returned a verdict for the plaintiff in the amount of $3,250, but the trial court required a remittitur of $750, which was made.

The defendants argue their assignments of error under eight heads, but we will not notice all of them, as they are not material to a determination of the case.

The defendants' proposition 1 is: Their demurrer to plaintiff's evidence should have been sustained because (a) plaintiff failed to allege or prove the breach of any right of hers or duty on the part of defendants; (b) if the plaintiff sustained any injuries, they were due to her own negligence; (c) plaintiff failed to prove that the act of which she complains was the proximate cause of her injuries. We will consider these in their order.

Under the provisions of section 1,653, O. S. 1931 (sec. 6607, C. O. S. 1921), it is made the duty of a husband to support the wife, i. e., furnish her with the necessaries of life. Among these are fuel, lights, and water for the use in the home. Anyone contracting with a husband to furnish gas and water for use in the home maintained by the husband must know and realize that the members of the husband's family have a beneficial interest in having such necessaries furnished, and the contract by which they are to be furnished. Any violation of this contract, and the incidents flowing therefrom, may give rise to a cause of action on the part of individual members of the family other than the husband. The evidence upon the making of this contract, the terms and conditions thereof, and of the breach thereof, was conflicting. It therefore became the duty of the trial court to submit these points to the jury, and its finding upon them is conclusive.

The defendants charged the plaintiff with contributory negligence, in the acts attributed to her and by the use of that term in their pleading. At another place in their answer the language used is sufficient to charge the plaintiff with a failure to avoid the consequences of the alleged negligent act, or with a failure to mitigate the resulting damages. The evidence of the plaintiff alone was sufficient to show that after the defendants had disconnected the gas, whether negligently or otherwise, she did nothing to avoid any injurious consequences which might flow therefrom. Her own testimony shows that she was not forced to stay in this cold house, that she was offered warm shelter by her neighbors, but declined the offer and stayed in her own house, cold as she alleged it to be, to take care of her dog. In our opinion, this showed that the plaintiff failed to use reasonable

care and prudence, considering her delicate condition, to avoid any injury from the consequences of the acts of the defendants, even if they were negligent. However, the defendants seemed to have treated this as contributory negligence, for they requested an instruction on the question of contributory negligence only. Whether the plaintiff was guilty of contributory negligence, or failure to avoid the consequences, the first is a complete defense and the second merely in mitigation of the damages; and either or both must be submitted to the jury, with appropriate instructions. We find no error in the court's instruction on contributory negligence, and no instruction on avoiding the consequences was requested or given. The defendants, having failed to request an instruction upon this point, cannot complain of the court's failure to give it. The defendants' position in this matter amounts almost to a change of theory upon appeal.

Concerning defendants' contention regarding the failure of proof of the proximate cause of the injuries, it appears to us that it is so bound up with proposition 6, which will be later discussed, that we pass it by for the time.

We next consider proposition 6: Question of injury is one to be determined by knowledge of medical science. What we understand this proposition to mean is, that the question of whether plaintiff's injuries were the result of the alleged negligent act of defendants is a matter of medical science to be established by expert testimony. With this we agree. This rule has been stated by us in many negligence cases to be:

"Where the injuries are of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and must necessarily be determined by the testimony of skilled professional persons, and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries." (Willet v. Johnson, 13 Okla. 563, 76 P. 174; St. L. & S. F. Ry. v. Criner, 41 Okla. 256, 137 P. 705; St. L., M. & S. Co. v. State Ind. Comm., 113 Okla. 179, 241 P. 170.)

The plaintiff testified as to her knowledge of her pregnancy, detailing the symptoms by which she, from her personal experience, judged she was pregnant. She further testified in minute detail of her experiences for several days preceding the day on which she alleges she suffered her exposure. She testified concerning her condition thereafter, and especially concerning the miscarriage, which she attempted to

judge by her previous miscarriages. She was incompetent to testify that the exposure resulting from the alleged negligent acts of the defendants caused her condition, and she did not attempt to do so. She called as an expert witness Dr. H. K. Maxwell, a chiropractor. He testified as to what causes would bring on a miscarriage, and among them mentioned a "cycle complex," which he later termed an emotional condition, and exposure. He testified that the plaintiff suffered from what he termed a "cycle complex," because she was a woman intensely emotional, easily excited, and intensely nervous. The substance of plaintiff's evidence was related to him in the form of hypothetical questions, which he said had already been related to him by her as the history of the case. This witness was then asked the direct question of what, in his opinion, was the cause of the plaintiff's miscarriage, and he answered that he did not know. The similarity of this case in numerous instances with that cited by defendants of Willet v. Johnson, 13 Okla. 563, 76 P. 174, is sufficient to make that case controlling upon this question. We quote herewith at length pertinent portions of Willet v. Johnson, supra:

"The injuries alleged to be the result of the assault and battery are: inflammation of the uterus, fallopian tubes, bladder and its appendages, for which injuries plaintiff alleges:

"'That she has suffered great, intense and continuous pain and mental anguish, that her health has been permanently and greatly impaired, and that she has been damaged by reason of the different wrongful and malicious acts of the defendant, by reason of the bodily afflictions described, and by reason of the great physical pain and mental anguish, in the sum of $5,000.'

"The petition alleges, among other things, that the plaintiff, on or about the 2nd day of March, 1902, sustained an accidental miscarriage, and for a period of about five weeks immediately following, she was under the constant care and treatment of the family physician, and received continuous treatment for the effects of the miscarriage. * * *

"The record shows that at the time of the alleged assault, the husband of the plaintiff below was working for the defendant as a farm laborer; the husband, with the plaintiff and her daughter, occupying a building belonging to the defendant, on the defendant's farm, the use of which was allowed the husband as part compensation for his labor.

"Defendant having become dissatisfied with the plaintiff's husband, sought to end their business relations, and employed an-

other man whom he intended to permit to occupy the house, intending to have the plaintiff and her husband remove therefrom. When he appeared upon the land at the time stated, a controversy arose between the parties, and the defendant, walking toward the house to a point near the steps leading into the door, attempting to go into the house, when the plaintiff placed himself in a position at the door which prevented him from entering, at the same time telling the defendant that he could not go in. The plaintiff testified, and was supported in the statement by her daughter, that when she refused to allow the defendant to enter the house, he caught her by the wrists and jerked her down from the door to the ground, the distance being two steps of about eight inches each. This act constituted the assault and battery named in the petition, and this is the act which it is claimed caused the injuries sustained. * * *

"The most serious proposition in this case grows out of the evidence, or rather, the want of evidence bearing upon the question of whether or not the affliction from which the plaintiff was suffering and had suffered in the past was caused by the assault on the part of the defendant. The testimony introduced in support of the plaintiff's case was that of the plaintiff herself, her daughter Blanche, and Dr. T. R. Stegall. The record conclusively shows that the plaintiff and her daughter do not possess any extraordinary intelligence, and none of a professional character, such as would give them information of these matters under consideration, but, on the contrary, are persons of very limited education. The only witness offered having any medical skill or scientific knowledge of injuries of this character was Dr. Stegall.

"We may consider the fact that the plaintiff was suffering from inflammation of the uterus, ovaries and the bladder and its appendages, as being sufficiently proved, in fact, there was no conflict in the evidence upon this point, the only trouble being that the evidence fails to show the injuries to be the result of the assault, and falls short of being satisfactory as to their extent.

"The mere fact that the plaintiff was afflicted in the manner shown, and was suffering therefrom, does not prove the cause of the injuries, and here is where the trouble arises in this case, and where the evidence of the plaintiff fails to support the allegations of the petition.

"It follows necessarily, from the fact that neither the plaintiff nor her daughter had any special skill or knowledge with reference to the diseases with which plaintiff was afflicted, that the testimony which was given by them upon this subject would be of no value, and of no aid to the jury in determining what caused the injuries from which the plaintiff was suffering, or their extent.

"To maintain her action, in this particular, under the circumstances of this case as disclosed by the record, the plaintiff should have offered evidence of skilled witnesses to show that her condition was the result of the assault; indeed, the court so instructed the jury, when it said that before the jury could find a verdict in favor of the plaintiff they must find the injuries complained of were the direct, immediate and proximate result of the assault and battery. While the learned judge well understood the rule governing this branch, yet he failed to make proper application of it when he allowed the jury to consider this question, inasmuch as there was an entire want of evidence upon this point. It is impossible for persons unskilled in the profession of medicine or surgery to determine the cause of such diseases as the plaintiff in this case was suffering from; and these questions being questions of science, must necessarily be determined by the testimony of skilled and professional men; and they can determine the fact sufficiently for them to form an opinion, only by a careful examination and information derived from the patient.

"Dr. Stegall was the only witness called for the plaintiff who testified upon this subject, who by reason of his scientific knowledge was capable of giving the court and jury the necessary information.

"He testified that about the first of March he was called to treat the plaintiff, and that about the day before he was called, the plaintiff had had a miscarriage; that he made about three visits, but that he continued treating her for some time, and was again called to see her about the first of April. At that time, the doctor states, the plaintiff was suffering in the region of the ovaries, and especially upon one side; that she complained of having a chill. The doctor states that there are a number of things that might cause the condition of the patient at that time. The first and more usual would be exposure to cold; the second, some menstrual disturbance; the third, an injury of some kind, a strain; and that it might have been the result of the former miscarriage. He testifies that in eight or nine days following that treatment, he saw her again when she came to town, and that he has since been treating her off and on, more at some times than others. When asked the direct question as to what had caused the plaintiff's trouble, this witness answered 'I do not know.'

"This witness, having heard the testimony of the plaintiff, and her daughter as to the assault alleged to have been made, was asked by the court whether or not this assault testified to by the plaintiff would produce the injury from which the plaintiff was suffering. The doctor stated that she evidently was not entirely well if it would cause it. Again he says: 'I think if that

would have caused it, she would not have been a healthy woman.'

"Again, this witness was asked if he knew the plaintiff's condition at the time of the assault, and he answered that he did not; that she came back and got a bottle of medicine, and he thinks he gave her a second bottle, but he did not hear from her for some time. Again, the court asked this witness:

"'Q. Did you make an examination as to what caused the miscarriage?

"'A. I could not tell.

"'Q. Did you make an examination?

"'A. No, sir; I examined her, but not to ascertain what caused it.'

"This is the principal part, if not all the testimony of this witness bearing upon this particular branch of the case. He was examined at some length concerning the nature of the injuries complained of, the origin of such injuries and the difference and extent of the same as shown in different persons, but in no particular did he testify to the extent of these particular injuries as to whether they were permanent, or how serious they were, or whether, if curable, how long and what character of treatment would be required to cure them.

"Again, he states further on in the examination, that the most prevalent cause of these troubles is cold, and that he thinks that exposure to cold at certain times would have caused the affliction from which the plaintiff was suffering, even if she had been enjoying entirely good health.

"We are not now considering the question of the weight of the evidence in this particular, but only the fact that the evidence fails to show what was the cause of the injury from which the plaintiff was suffering.

"It was absolutely essential that the plaintiff should show what caused the injury. It was not sufficient to show simply that there was an injury, for it does not follow that because the plaintiff was suffering from some injury, that such injury was caused by the assault on the part of the defendant."

The plaintiff cites the case of St. Louis-S. F. Ry. Co. v. Loftus, 109 Okla. 141, 234 P. 607, wherein it is said:

"Defendant contends that the evidence was not sufficient to prove injuries of miscarriage, on the ground that there was no positive proof, except the testimony of plaintiff herself, and her testimony, not having being of expert and scientific value, was not sufficient, citing the following cases: Willet v. Johnson, 13 Okla. 563, 76 P. 174; Atchison, T. & S. F. Ry. Co. v. Melson, 40 Okla. 1, 134 P. 388; 13 Cyc. 216; St. L.-S. F. Ry. Co. v. Criner, 41 Okla. 256, 137 P. 705; Ft. Smith & W. R. Co. v. Jones, 63 Okla. 228, 163 P. 1110; Okla. Hospital v. Brown, 87 Okla. 46, 208 P. 785.

"We have examined these cases and we do not think the facts fit the case under consideration. In this case plaintiff testified that her foot turned and she was so shaken up, in getting down from the steps of the car to the platform, that she suffered pain, went to her house, a short distance, and took to her bed, and continued in bed until the miscarriage, which was a short time thereafter. We do not think it would require expert testimony to prove the facts thus related by plaintiff, and the jury had a right to infer from all the facts and circumstances, admitted as testimony in the case, that the miscarriage resulted from the shake up in getting off the train"

—and relies upon this rule.

There is an apparent conflict in the holding in this case and that of Willet v. Johnson, supra, which we desire to follow. Upon careful consideration we believe this conflict is more apparent than real. When the necessity and reasons for the rule of opinion evidence or expert testimony are considered, the divergence between these holdings is explained. It is said in 11 R. C. L. 572, sec. 7:

"It is evident that deductions from observed facts must often be necessary, which require scientific or specialized knowledge or experience and for which the general common sense and practical experience of the jury are inadequate."

It is conceivable that a pregnant woman may receive a blow, or be struck down, both of which are generally known to be causes of miscarriage, and that the miscarriage would result immediately or so closely thereafter as to be practically a part of the act producing it, in which instance the general common sense and practical experience of the jury could arrive at only one conclusion: that the blow or fall produced the miscarriage.

The elements of time, of the exclusion of the inference that any other cause intervened or caused it, and of clear physical evidence of the event or cause to which it is attributed when shown, and are so correlated that a man of general common sense and practical experience can draw but one conclusion, the necessity or reason supporting the opinion evidence rule are absent. The language of St. L.-S. F. Ry. Co. v. Loftus, supra, is too broad a statement of the rule, and is expressly modified to meet the rule herein stated.

Without commenting upon the correctness of the application to that case of the rule stated by us herein, we do say that the

facts in this case are such as to show the necessity and reason for the opinion evidence rule. The plaintiff showed that some days elapsed between the day of the exposure complained of and the miscarriage. She attributed the miscarriage to exposure, when her own testimony is that the day before, and possibly the day before that, she had been exposed to practically the same weather conditions, coupled with the work and attendant fatigue of driving an automobile about 300 miles through such weather. In addition to this the expert witness called by her named at least two probable causes for her miscarriage and refused to give an opinion as to which cause the miscarriage was attributable. One of these causes, her own emotional condition, the defendant undoubtedly could not be liable for. This last discussed phase of her evidence conclusively shows the necessity for expert testimony in this case. A jury should never be permitted to speculate upon or infer what an expert witness refuses to express an opinion about.

Mention is made in plaintiff's pleadings of a lung condition, and the testimony of Dr. Maxwell shows that he had treated plaintiff some years prior to 1929, and found a lung condition for which she had been receiving treatments. He testified that he found this condition again in 1929, when he treated her for the miscarriage. He said that a few months after his treatments in January, 1929, plaintiff developed pleurisy. He says that this was probably caused by the miscarriage, and that her condition generally was worse than when he examined her first, all of which he attributes to the miscarriage. However, as we have heretofore shown, he does not attribute the miscarriage to any one particular thing.

For these reasons, based upon proposition 6, the judgment of the trial court must be reversed. Believing that perhaps the case may be tried again, we discussed proposition 1 as we did, and we also desire to discuss another proposition for the guidance of the trial court. Proposition 7: "A chiropractor is not a competent witness to testify concerning questions requiring knowledge of medical science." We understand this proposition to mean (according to the objections made to the competency of his testimony at the trial) that the witness was incompetent to testify as to what would cause or did cause the miscarriage of the plaintiff. By the use of the term "medical science," the defendants unduly limited the proposition. There are many manners and methods of treating and healing the human body, which might not be strictly termed "medical science," but nevertheless are recognized as scientific methods and render their qualified practitioners eligible to testify as expert witnesses within the scope of their knowledge, according to their qualifications. The defendants do not cite us any cases in support of their proposition. The practice of chiropractic, as a method of treatment and healing, is permitted and regulated in Oklahoma by statute. The course of study and preparation precedent to admission to practice is prescribed by law. When a duly licensed chiropractor is called as an expert witness and establishes his qualifications to testify as an expert witness, that is, as a chiropractor, he is competent to testify as an expert witness. The question of whether his qualifications have been established and the extent to which his competency goes is a question for the trial court, in the same manner and to the same extent as any other expert witness. The weight and value of his testimony is a matter for the jury, and is subject to be supported or minimized by examination and cross-examination, just as is that of any other expert witness.

The other assignments of error will not be discussed in this opinion, as they are not material to the determination of this case, and if it is retried they may not recur.

The judgment of the trial court is reversed, and the cause is remanded for further trial.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, OSBORN, and WELCH, JJ., concur. SWINDALL, McNEILL, and BUSBY, JJ., absent.